# WELSH *v.* WISCONSIN

No. 82–5466.   Argued October 5, 1983—Decided May 15, 1984

BRENNAN, J., delivered the opinion of the Court, in which MARSHALL, BLACKMUN, POWELL, STEVENS, and O'CONNOR, JJ., joined. BLACKMUN, J., filed a concurring opinion, *post*, p. 755. BURGER, C. J., filed a separate statement, *post*, p. 755. WHITE, J., filed a dissenting opinion, in which REHNQUIST, J., joined, *post*, p. 756.

*Gordon Brewster Baldwin* argued the cause for petitioner. With him on the briefs was *Archie E. Simonson.*

*Stephen W. Kleinmaier*, Assistant Attorney General of Wisconsin, argued the cause for respondent. With him on the brief was *Bronson C. La Follette*, Attorney General.*

JUSTICE BRENNAN delivered the opinion of the Court.

*Payton* v. *New York*, 445 U. S. 573 (1980), held that, absent probable cause and exigent circumstances, warrantless arrests in the home are prohibited by the Fourth Amend-

---

*\*Charles F. Kahn, Jr.*, filed a brief for the Wisconsin Civil Liberties Union Foundation as *amicus curiae* urging reversal.

ment.   But the Court in that case explicitly refused "to consider the sort of emergency or dangerous situation, described in our cases as 'exigent circumstances,' that would justify a warrantless entry into a home for the purpose of either arrest or search." *Id.*, at 583.   Certiorari was granted in this case to decide at least one aspect of the unresolved question: whether, and if so under what circumstances, the Fourth Amendment prohibits the police from making a warrantless night entry of a person's home in order to arrest him for a nonjailable traffic offense.

## I

## A

Shortly before 9 o'clock on the rainy night of April 24, 1978, a lone witness, Randy Jablonic, observed a car being driven erratically.   After changing speeds and veering from side to side, the car eventually swerved off the road and came to a stop in an open field.   No damage to any person or property occurred.   Concerned about the driver and fearing that the car would get back on the highway, Jablonic drove his truck up behind the car so as to block it from returning to the road. Another passerby also stopped at the scene, and Jablonic asked her to call the police.   Before the police arrived, however, the driver of the car emerged from his vehicle, approached Jablonic's truck, and asked Jablonic for a ride home.   Jablonic instead suggested that they wait for assistance in removing or repairing the car.   Ignoring Jablonic's suggestion, the driver walked away from the scene.

A few minutes later, the police arrived and questioned Jablonic.   He told one officer what he had seen, specifically noting that the driver was either very inebriated or very sick.   The officer checked the motor vehicle registration of the abandoned car and learned that it was registered to the petitioner, Edward G. Welsh.   In addition, the officer noted that the petitioner's residence was a short distance from the scene, and therefore easily within walking distance.

Without securing any type of warrant, the police proceeded to the petitioner's home, arriving about 9 p. m. When the petitioner's stepdaughter answered the door, the police gained entry into the house.[1] Proceeding upstairs to the petitioner's bedroom, they found him lying naked in bed. At this point, the petitioner was placed under arrest for driving or operating a motor vehicle while under the influence of an intoxicant, in violation of Wis. Stat. § 346.63(1) (1977).[2] The petitioner was taken to the police station, where he refused to submit to a breath-analysis test.

B

As a result of these events, the petitioner was subjected to two separate but related proceedings: one concerning his refusal to submit to a breath test and the other involving the alleged code violation for driving while intoxicated. Under the Wisconsin Vehicle Code in effect in April 1978, one arrested for driving while intoxicated under § 346.63(1) could be requested by a law enforcement officer to provide breath, blood, or urine samples for the purpose of determining the presence or quantity of alcohol. Wis. Stat. § 343.305(1) (1975). If such a request was made, the arrestee was re-

---

[1] The state trial court never decided whether there was consent to the entry because it deemed decision of that issue unnecessary in light of its finding that exigent circumstances justified the warrantless arrest. After reversing the lower court's finding of exigent circumstances, the Wisconsin Court of Appeals remanded for full consideration of the consent issue. See *State* v. *Welsh*, No. 80–1686 (May 26, 1981), App. 114–125. That remand never occurred, however, because the Supreme Court of Wisconsin reversed the Court of Appeals and reinstated the trial court's judgment. See 108 Wis. 2d 319, 321 N. W. 2d 245 (1982). For purposes of this decision, therefore, we assume that there was no valid consent to enter the petitioner's home.

[2] Since the petitioner's arrest, § 346.63 has been amended to provide that it is a code violation to drive or operate a motor vehicle while under the influence of an intoxicant *or* while evidencing certain blood- or breath-alcohol levels. See Wis. Stat. §§ 346.63(1)(a), (b) (1981–1982). This amendment, however, has no bearing on the issues raised by the present case.

quired to submit to the appropriate testing or risk a revocation of operating privileges. Cf. *South Dakota* v. *Neville,* 459 U. S. 553 (1983) (admission into evidence of a defendant's refusal to submit to a blood-alcohol test does not offend constitutional right against self-incrimination). The arrestee could challenge the officer's request, however, by refusing to undergo testing and then asking for a hearing to determine whether the refusal was justified. If, after the hearing, it was determined that the refusal was not justified, the arrestee's operating privileges would be revoked for 60 days.[3]

The statute also set forth specific criteria to be applied by a court when determining whether an arrestee's refusal to take a breath test was justified. Included among these criteria was a requirement that, before revoking the arrestee's operating privileges, the court determine that "the refusal . . . to submit to a test was unreasonable." § 343.305(2)(b)(5) (1975). It is not disputed by the parties that an arrestee's refusal to take a breath test would be reasonable, and therefore operating privileges could not be revoked, if the underlying arrest was not lawful. Indeed, state law has consistently provided that a valid arrest is a necessary prerequisite to the imposition of a breath test. See *Scales* v. *State,* 64 Wis. 2d 485, 494, 219 N. W. 2d 286, 292 (1974).[4] Although the stat-

---

[3] Since the petitioner's arrest, this statute also has been amended, with the current version found at Wis. Stat. § 343.305 (1981–1982). Although the procedures to be followed by the law enforcement officer and the arrestee have remained essentially unchanged, §§ 343.305(3), (8), the potential length of any revocation of operating privileges has been increased, depending on the arrestee's prior driving record, §§ 343.305(9)(a), (b). An arrestee who improperly refuses to submit to a required test may also be required to comply with an assessment order and a driver safety plan, §§ 343.305(9)(c)–(e). These amendments, however, also have no direct bearing on the issues raised by the present case.

[4] "The implied consent law does not limit the right to take a blood sample as an incident to a *lawful* arrest. *It should be emphasized, however, that the arrest, and therefore probable cause for making it, must precede the taking of the blood sample.* We conclude that the sample was constitu-

ute in effect in April 1978 referred to reasonableness, the current version of § 343.305 explicitly recognizes that one of the issues that an arrestee may raise at a refusal hearing is "whether [he] was lawfully placed under arrest for violation of s. 346.63(1)." §§ 343.305(3)(b)(5)(a), (8)(b) (1981–1982). See also 67 Op. Wis. Atty. Gen. No. 93–78 (1978) ("statutory

tionally taken incident to the *lawful* arrest." 64 Wis. 2d, at 494, 219 N. W. 2d, at 292 (emphasis added).

Nor is there any doubt that the Supreme Court of Wisconsin applies federal constitutional standards when determining whether an arrest, even for a nonjailable traffic offense, is lawful. The court, for example, explained the basis for its holding in this case as follows:

"The trial court revoked the defendant's motor vehicle operator's license for sixty days pursuant to his unreasonable refusal to submit to a breathalyzer test, as required by [state statute].

"The defendant challenges the officer's warrantless arrest in his residence as violating the Fourth Amendment of the United States Constitution and Article I, section 11 of the Wisconsin Constitution. The [trial court] upheld this warrantless arrest concluding that probable cause to believe that the defendant had been operating a motor vehicle while under the influence of an intoxicant, coupled with the existence of exigent circumstances, justified the officers' entry into the defendant's residence. . . . [T]he court of appeals reversed the trial court, holding that, although the officers' warrantless arrest was unreasonable, thereby violating the Fourth and Fourteenth Amendments, the absence of a finding regarding the consensual entry necessitated remanding the case on that issue. We affirm the findings of the [trial court], holding that the co-existence of probable cause and exigent circumstances in this case justifies the warrantless arrest . . . .

*"To prevail in this case, the state must prove the co-existence of probable cause and exigent circumstances, justifying the officer's conduct at the defendant's residence. We hold that there was ample evidence supporting the trial court's ruling that the officer's entry was justified on the basis of both probable cause and exigent circumstances. Entry to effect a warrantless arrest in a residence is subject to the limitations imposed by both the United States and the Wisconsin Constitutions. U. S. Const. amend. IV; Wis. Const. art. I, sec. 11."* 108 Wis. 2d, at 320–321, 326–327, 321 N. W. 2d, at 246–247, 249–250 (emphasis added) (citations and footnotes omitted).

scheme . . . contemplates that a lawful arrest be made prior to a request for submission to a test").[5]

Separate statutory provisions control the penalty that might be imposed for the substantive offense of driving while intoxicated. At the time in question, the Vehicle Code provided that a first offense for driving while intoxicated was a noncriminal violation subject to a civil forfeiture proceeding for a maximum fine of $200; a second or subsequent offense in the previous five years was a potential misdemeanor that could be punished by imprisonment for up to one year and a maximum fine of $500. Wis. Stat. § 346.65(2) (1975). Since that time, the State has made only minor amendments to these penalty provisions. Indeed, the statute continues to categorize a first offense as a civil violation that allows for only a monetary forfeiture of no more than $300. § 346.65(2)(a) (Supp. 1983–1984). See State v. Albright, 98 Wis. 2d 663, 672–673, 298 N. W. 2d 196, 202 (App. 1980).

## C

As noted, in this case the petitioner refused to submit to a breath test; he subsequently filed a timely request for a refusal hearing. Before that hearing was held, however, the State filed a criminal complaint against the petitioner for driving while intoxicated.[6] The petitioner responded by

---

[5] Because state law provides that evidence of the petitioner's refusal to submit to a breath test is inadmissible if the underlying arrest was unlawful, this case does not implicate the exclusionary rule under the Federal Constitution.

[6] The petitioner was charged with a criminal misdemeanor because this was his second such citation in the previous five years. See § 346.65(2) (1975). Although the petitioner was subject to a criminal charge, the police conducting the warrantless entry of his home did not know that the petitioner had ever been charged with, or much less convicted of, a prior violation for driving while intoxicated. It must be assumed, therefore, that at the time of the arrest the police were acting as if they were investigating and eventually arresting for a nonjailable traffic offense that constituted only a civil violation under the applicable state law. See Beck v. Ohio, 379 U. S. 89, 91, 96 (1964).

filing a motion to dismiss the complaint, relying on his contention that the underlying arrest was invalid. After receiving evidence at a hearing on this motion in July 1980, the trial court concluded that the criminal complaint would not be dismissed because the existence of both probable cause and exigent circumstances justified the warrantless arrest. The decision at the refusal hearing, which was not held until September 1980, was therefore preordained. In fact, the primary issue at the refusal hearing—whether the petitioner acted reasonably in refusing to submit to a breath test because he was unlawfully placed under arrest, see *supra*, at 744–746—had already been determined two months earlier by the same trial court.

As expected, after the refusal hearing, the trial court concluded that the arrest of the petitioner was lawful and that the petitioner's refusal to take the breath test was therefore unreasonable.[7]  Accordingly, the court issued an order suspending the petitioner's operating license for 60 days. On appeal, the suspension order was vacated by the Wisconsin Court of Appeals. See *State* v. *Welsh*, No. 80–1686 (May 26, 1981), App. 114–125. Contrary to the trial court, the appellate court concluded that the warrantless arrest of the petitioner in his home violated the Fourth Amendment because the State, although demonstrating probable cause to arrest, had not established the existence of exigent circumstances. The petitioner's refusal to submit to a breath test was therefore reasonable.[8]  The Supreme Court of Wisconsin in turn reversed the Court of Appeals, relying on the existence of

---

[7] When ruling from the bench after the refusal hearing, the trial judge specifically indicated:

"[T]he Court is bound by its earlier ruling that that was a valid arrest. And, I think [counsel for the petitioner] certainly will have the right to challenge that on appeal if he appeals this matter, as well as the previous ruling should there be a conviction on the underlying charge." App. 111. See also *id.*, at 112–113.

[8] The court remanded the case for further findings as to whether the police had entered the petitioner's home with consent. See n. 1, *supra*.

three factors that it believed constituted exigent circumstances: the need for "hot pursuit" of a suspect, the need to prevent physical harm to the offender and the public, and the need to prevent destruction of evidence. See 108 Wis. 2d 319, 336–338, 321 N. W. 2d 245, 254–255 (1982). Because of the important Fourth Amendment implications of the decision below, we granted certiorari. 459 U. S. 1200 (1983).[9]

## II

It is axiomatic that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States* v. *United States District Court*, 407 U. S. 297, 313 (1972). And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. See *Johnson* v. *United States*, 333 U. S. 10, 13–14 (1948).[10] It is not surprising, therefore,

---

[9] Although the state courts differed in their respective conclusions concerning exigent circumstances, they each found that the facts known to the police at the time of the warrantless home entry were sufficient to establish probable cause to arrest. The petitioner has not challenged that finding before this Court.

The parallel criminal proceedings against the petitioner, see *supra*, at 746–747, and n. 6, resulted in a misdemeanor conviction for driving while intoxicated. During the jury trial, held in early 1982, the State introduced evidence of the petitioner's refusal to submit to a breath test. His appeal from that conviction, now before the Wisconsin Court of Appeals, has been stayed pending our decision in this case. See Brief for Petitioner 17, n. 5.

[10] In *Johnson*, Justice Jackson eloquently explained the warrant requirement in the context of a home search:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. . . . The right of officers to thrust themselves into a home is . . . a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security

that the Court has recognized, as "a 'basic principle of Fourth Amendment law[,]' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton* v. *New York*, 445 U. S., at 586. See *Coolidge* v. *New Hampshire*, 403 U. S. 443, 474–475 (1971) ("a search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show . . . the presence of 'exigent circumstances' "). See also *Michigan* v. *Clifford*, 464 U. S. 287, 296–297 (1984) (plurality opinion); *Steagald* v. *United States*, 451 U. S. 204, 211–212 (1981); *McDonald* v. *United States*, 335 U. S. 451, 456 (1948); *Johnson* v. *United States, supra*, at 13–15; *Boyd* v. *United States*, 116 U. S. 616, 630 (1886).

Consistently with these long-recognized principles, the Court decided in *Payton* v. *New York, supra*, that warrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances. *Id.*, at 583–590. At the same time, the Court declined to consider the scope of any exception for exigent circumstances that might justify warrantless home arrests, *id.*, at 583, thereby leaving to the lower courts the initial application of the exigent-circumstances exception.[11] Prior decisions of this Court, however, have emphasized that exceptions to the warrant requirement are "few in number and carefully delineated," *United States* v. *United States District Court, supra*, at 318, and that the police bear a heavy burden

and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." 333 U. S., at 13–14 (footnote omitted).

[11] Our decision in *Payton*, allowing warrantless home arrests upon a showing of probable cause and exigent circumstances, was also expressly limited to felony arrests. See, *e. g.*, 445 U. S., at 574, 602. Because we conclude that, in the circumstances presented by this case, there were no exigent circumstances sufficient to justify a warrantless home entry, we have no occasion to consider whether the Fourth Amendment may impose an absolute ban on warrantless home arrests for certain minor offenses.

when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. Indeed, the Court has recognized only a few such emergency conditions, see, e. g., *United States* v. *Santana,* 427 U. S. 38, 42–43 (1976) (hot pursuit of a fleeing felon); *Warden* v. *Hayden,* 387 U. S. 294, 298–299 (1967) (same); *Schmerber* v. *California,* 384 U. S. 757, 770–771 (1966) (destruction of evidence); *Michigan* v. *Tyler,* 436 U. S. 499, 509 (1978) (ongoing fire), and has actually applied only the "hot pursuit" doctrine to arrests in the home, see *Santana, supra.*

Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. See *Payton* v. *New York, supra,* at 586. When the government's interest is only to arrest for a minor offense,[12] that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

This is not a novel idea. Writing in concurrence in *McDonald* v. *United States,* 335 U. S. 451 (1948), Justice Jackson explained why a finding of exigent circumstances to justify a warrantless home entry should be severely restricted when only a minor offense has been committed:

---

[12] Even the dissenters in *Payton,* although believing that warrantless home arrests are not prohibited by the Fourth Amendment, recognized the importance of the felony limitation on such arrests. See *id.,* at 616–617 (WHITE, J., joined by BURGER, C. J., and REHNQUIST, J., dissenting) ("The felony requirement guards against abusive or arbitrary enforcement and ensures that invasions of the home occur only in case of the most serious crimes").

"Even if one were to conclude that urgent circumstances might justify a forced entry without a warrant, no such emergency was present in this case. This method of law enforcement displays a shocking lack of all sense of proportion. Whether there is reasonable necessity for a search without waiting to obtain a warrant certainly depends somewhat upon the gravity of the offense thought to be in progress as well as the hazards of the method of attempting to reach it. . . . It is to me a shocking proposition that private homes, even quarters in a tenement, may be indiscriminately invaded at the discretion of any suspicious police officer engaged in following up offenses that involve no violence or threats of it. While I should be human enough to apply the letter of the law with some indulgence to officers acting to deal with threats or crimes of violence which endanger life or security, it is notable that few of the searches found by this Court to be unlawful dealt with that category of crime. . . . While the enterprise of parting fools from their money by the 'numbers' lottery is one that ought to be suppressed, I do not think its suppression is more important to society than the security of the people against unreasonable searches and seizures. When an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to some real immediate and serious consequences if he postponed action to get a warrant." *Id.*, at 459–460 (footnote omitted).

Consistently with this approach, the lower courts have looked to the nature of the underlying offense as an important factor to be considered in the exigent-circumstances calculus. In a leading federal case defining exigent circumstances, for example, the en banc United States Court of Appeals for the District of Columbia Circuit recognized that the gravity of the underlying offense was a principal factor

to be weighed. *Dorman* v. *United States*, 140 U. S. App. D. C. 313, 320, 435 F. 2d 385, 392 (1970).[13] Without approving all of the factors included in the standard adopted by that court, it is sufficient to note that many other lower courts have also considered the gravity of the offense an important part of their constitutional analysis.

For example, courts have permitted warrantless home arrests for major felonies if identifiable exigencies, independent of the gravity of the offense, existed at the time of the arrest. Compare *United States* v. *Campbell*, 581 F. 2d 22 (CA2 1978) (allowing warrantless home arrest for armed robbery when exigent circumstances existed), with *Commonwealth* v. *Williams*, 483 Pa. 293, 396 A. 2d 1177 (1978) (disallowing warrantless home arrest for murder due to absence of exigent circumstances). But of those courts addressing the issue, most have refused to permit warrantless home arrests for nonfelonious crimes. See, *e. g., State* v. *Guertin*, 190 Conn. 440, 453, 461 A. 2d 963, 970 (1983) ("The [exigent-circumstances] exception is narrowly drawn to cover cases of real and not contrived emergencies. The exception is limited to the investigation of serious crimes; misdemeanors are excluded"); *People* v. *Strelow*, 96 Mich. App. 182, 190–193, 292 N. W. 2d 517, 521–522 (1980). See also *People* v. *Sanders*, 59 Ill. App. 3d 6, 374 N. E. 2d 1315 (1978) (burglary without weapons not grave offense of violence for this purpose); *State* v. *Bennett*, 295 N. W. 2d 5 (S. D. 1980) (distribution of controlled substances not a grave offense for these purposes). But cf. *State* v. *Penas*, 200 Neb. 387, 263 N. W. 2d 835 (1978) (allowing warrantless home arrest upon hot pursuit from commission of misdemeanor in the officer's presence; decided before *Payton*); *State* v. *Niedermeyer*, 48 Ore. App. 665, 617

---

[13] See generally Donnino & Girese, Exigent Circumstances for a Warrantless Home Arrest, 45 Albany L. Rev. 90 (1980); Harbaugh & Faust, "Knock on Any Door"—Home Arrests After *Payton* and *Steagald*, 86 Dick. L. Rev. 191, 220–233 (1982); Note, Exigent Circumstances for Warrantless Home Arrests, 23 Ariz. L. Rev. 1171 (1981).

P. 2d 911 (1980) (allowing warrantless home arrest upon hot pursuit from commission of misdemeanor in the officer's presence). The approach taken in these cases should not be surprising. Indeed, without necessarily approving any of these particular holdings or considering every possible factual situation, we note that it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor.

We therefore conclude that the common-sense approach utilized by most lower courts is required by the Fourth Amendment prohibition on "unreasonable searches and seizures," and hold that an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made. Moreover, although no exigency is created simply because there is probable cause to believe that a serious crime has been committed, see *Payton*, application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense, such as the kind at issue in this case, has been committed.

Application of this principle to the facts of the present case is relatively straightforward. The petitioner was arrested in the privacy of his own bedroom for a noncriminal, traffic offense. The State attempts to justify the arrest by relying on the hot-pursuit doctrine, on the threat to public safety, and on the need to preserve evidence of the petitioner's blood-alcohol level. On the facts of this case, however, the claim of hot pursuit is unconvincing because there was no immediate or continuous pursuit of the petitioner from the scene of a crime. Moreover, because the petitioner had already arrived home, and had abandoned his car at the scene of the accident, there was little remaining threat to the public safety. Hence, the only potential emergency claimed by the State was the need to ascertain the petitioner's blood-alcohol level.

Even assuming, however, that the underlying facts would support a finding of this exigent circumstance, mere similarity to other cases involving the imminent destruction of evidence is not sufficient. The State of Wisconsin has chosen to classify the first offense for driving while intoxicated as a noncriminal, civil forfeiture offense for which no imprisonment is possible. See Wis. Stat. § 346.65(2) (1975); § 346.65(2)(a) (Supp. 1983–1984); *supra*, at 746. This is the best indication of the State's interest in precipitating an arrest, and is one that can be easily identified both by the courts and by officers faced with a decision to arrest. See n. 6, *supra*. Given this expression of the State's interest, a warrantless home arrest cannot be upheld simply because evidence of the petitioner's blood-alcohol level might have dissipated while the police obtained a warrant.[14] To allow a warrantless home entry on these facts would be to approve unreasonable police behavior that the principles of the Fourth Amendment will not sanction.

## III

The Supreme Court of Wisconsin let stand a warrantless, nighttime entry into the petitioner's home to arrest him for a civil traffic offense. Such an arrest, however, is clearly prohibited by the special protection afforded the individual in his home by the Fourth Amendment. The petitioner's arrest was therefore invalid, the judgment of the Supreme Court of Wisconsin is vacated, and the case is

---

[14] Nor do we mean to suggest that the prevention of drunken driving is not properly of major concern to the States. The State of Wisconsin, however, along with several other States, see, *e. g.*, Minn. Stat. § 169.121 subd. 4 (1982); Neb. Rev. Stat. § 39–669.07(1) (Supp. 1983); S. D. Codified Laws § 32–23–2 (Supp. 1983), has chosen to limit severely the penalties that may be imposed after a first conviction for driving while intoxicated. Given that the classification of state crimes differs widely among the States, the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense.

remanded for further proceedings not inconsistent with this opinion.[15]

*It is so ordered.*

THE CHIEF JUSTICE would dismiss the writ as having been improvidently granted and defer resolution of the question presented to a more appropriate case.

JUSTICE BLACKMUN, concurring.

I join the Court's opinion but add a personal observation.

I yield to no one in my profound personal concern about the unwillingness of our national consciousness to face up to—and to do something about—the continuing slaughter upon our Nation's highways, a good percentage of which is due to drivers who are drunk or semi-incapacitated because of alcohol or drug ingestion. I have spoken in these Reports to this point before. *Perez* v. *Campbell*, 402 U. S. 637, 657, and 672 (1971) (opinion concurring in part and dissenting in part); *Tate* v. *Short*, 401 U. S. 395, 401 (1971) (concurring opinion). See also *South Dakota* v. *Neville*, 459 U. S. 553, 555–559 (1983).

And it is amazing to me that one of our great States—one which, by its highway signs, proclaims to be diligent and emphatic in its prosecution of the drunken driver—still classifies driving while intoxicated as a *civil* violation that allows only a money forfeiture of not more than $300 so long as it is a *first* offense. Wis. Stat. § 346.65(2)(a) (Supp. 1983–1984). The State, like the indulgent parent, hesitates to discipline the spoiled child very much, even though the child is engaging in an act that is dangerous to others who are law abiding and helpless in the face of the child's act. See *ante*, at 754, n. 14 (citing other statutes). Our personal convenience still weighs heavily in the balance, and the highway deaths and

---

[15] On remand, the state courts may consider whether the petitioner's arrest was justified because the police had validly obtained consent to enter his home. See n. 1, *supra*.

injuries continue. But if Wisconsin and other States choose by legislation thus to regulate their penalty structure, there is, unfortunately, nothing in the United States Constitution that says they may not do so.

JUSTICE WHITE, with whom JUSTICE REHNQUIST joins, dissenting.

At common law, "a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable ground for making the arrest." *United States* v. *Watson*, 423 U. S. 411, 418 (1976). But the requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment, see *Street* v. *Surdyka*, 492 F. 2d 368, 371–372 (CA4 1974); 2 W. LaFave, Search and Seizure § 5.1 (1978), and we have never held that a warrant is constitutionally required to arrest for nonfelony offenses occurring out of the officer's presence. Thus, "it is generally recognized today that the common law authority to arrest without a warrant in misdemeanor cases may be enlarged by statute, and this has been done in many of the states." E. Fisher, Laws of Arrest 130 (1967); see ALI, Model Code of Pre-Arraignment Procedure, Appendix X (1975); 1 C. Alexander, The Law of Arrest 445–447 (1949); Wilgus, Arrest Without a Warrant, 22 Mich. L. Rev. 541, 673, 706 (1924).

Wisconsin is one of the States that have expanded the common-law authority to arrest for nonfelony offenses. Wisconsin Stat. § 345.22 (Supp. 1983–1984) provides that "[a] person may be arrested without a warrant for the violation of a traffic regulation if the traffic officer has reasonable grounds to believe that the person is violating or has violated a traffic regulation." Relying on this statutory authority, officers of the Madison Police Department arrested Edward Welsh in a bedroom in his home for violating Wis. Stat. § 346.63(1) (1977), which proscribes the operation of a motor

vehicle while intoxicated. Welsh refused to submit to a breath or blood test, and his operator's license was eventually revoked for 60 days for this reason pursuant to Wis. Stat. § 343.305 (1975).

In the civil license revocation proceeding, Welsh argued that his arrest in his house without a warrant was unconstitutional under the Fourth and Fourteenth Amendments to the Federal Constitution and that his refusal to submit to the test could not be used against him. This contention was not based on the proposition that using the refusal in the revocation proceeding would contravene federal law, but rather rested on the fact that Wis. Stat. § 343.305(2)(b)(5) (1975) had been interpreted to require that an arrest be legal if a refusal to be tested is to be the basis for a license revocation.

On review of the license revocation, the Supreme Court of Wisconsin appears to have recognized that, under the Wisconsin statute, Welsh's license was wrongfully revoked if the officers who arrested him had violated the Federal Constitution. 108 Wis. 2d 319, 321 N. W. 2d 245 (1982). See *Scales* v. *State*, 64 Wis. 2d 485, 494, 219 N. W. 2d 286, 292 (1974). The court acknowledged that "the individual's right to privacy in the home is a fundamental freedom" and made clear that the State bore the burden of establishing exigent circumstances justifying a warrantless in-home arrest. 108 Wis. 2d, at 327, 321 N. W. 2d, at 250. But it discerned a strong state interest in combating driving under the influence of alcohol, *id.*, at 334–335, 321 N. W. 2d, at 253–254, and held that the warrantless arrest was proper because (1) the officers were in hot pursuit of a defendant seeking to avoid a chemical sobriety test; (2) Welsh posed a potential threat to public safety; and (3) "[w]ithout an immediate blood alcohol test, highly reliable and persuasive evidence facilitating the state's proof of [Welsh's] alleged violation . . . would be destroyed." *Id.*, at 338, 321 N. W. 2d, at 255. For two reasons, I would not overturn the judgment of the Supreme Court of Wisconsin.

First, it is not at all clear to me that the important constitutional question decided today should be resolved in a case such as this. Although Welsh argues vigorously that the State violated his federal constitutional rights, he at no point relied on the exclusionary rule, and he does not contend that the Federal Constitution or federal law provides the remedy he seeks. As a general rule, this Court "reviews judgments, not statements in opinions." *Black* v. *Cutter Laboratories*, 351 U. S. 292, 297 (1956). Because the Court does not purport to hold that federal law requires the conclusion that Welsh's refusal to submit to a sobriety test was reasonable, it is not clear to me how the judgment of the Supreme Court of Wisconsin offends federal law.

It is true that under the Wisconsin statutory scheme, an arrestee's refusal to take a breath or blood test would be reasonable and would not justify revocation of operating privileges if the underlying arrest violated the Fourth Amendment or was otherwise unlawful. What the State has done, however, is to attach consequences to an arrest found unlawful under the Federal Constitution that we have never decided federal law itself would attach. The Court has occasionally taken jurisdiction over cases in which the States have provided remedies for violations of federally defined obligations. *E. g.*, *Moore* v. *Chesapeake & Ohio R. Co.*, 291 U. S. 205 (1934). But it has done so in contexts where state remedies are employed to further federal policies. See Greene, Hybrid State Law in the Federal Courts, 83 Harv. L. Rev. 289, 300 (1969). The Fourth Amendment of course applies to the police conduct at issue here. In providing that a driver may reasonably refuse to submit to a sobriety test if he was unlawfully arrested, Wisconsin's Legislature and courts are pursuing a course that they apparently hope will reduce police illegality and safeguard their citizens' rights. Although the State is entitled to draw this conclusion and to implement it as a matter of state law, I am very doubtful that the policies underlying the Fourth Amendment would

require exclusion of the fruits of an illegal arrest in a civil proceeding to remove from the highways a person who insists on driving while under the influence of alcohol. If that is the case—if it would violate no federal policy to revoke Welsh's license even if his arrest was illegal—there is no satisfactory reason for us to review the Supreme Court of Wisconsin's judgment affirming the revocation, even if that court mistakenly applied the Fourth Amendment. For me, this is ample reason not to disturb the judgment.

In any event, I believe that the state court properly construed the Fourth Amendment. It follows from *Payton* v. *New York*, 445 U. S. 573 (1980), that warrantless nonfelony arrests in the home are prohibited by the Fourth Amendment absent probable cause and exigent circumstances. Although I continue to believe that the Court erred in *Payton* in requiring exigent circumstances to justify warrantless in-home felony arrests, *id.*, at 603 (WHITE, J., dissenting), I do not reject the obvious logical implication of the Court's decision. But I see little to commend an approach that looks to "the nature of the underlying offense as an important factor to be considered in the exigent-circumstances calculus." *Ante*, at 751.

The gravity of the underlying offense is, I concede, a factor to be considered in determining whether the delay that attends the warrant-issuance process will endanger officers or other persons. The seriousness of the offense with which a suspect may be charged also bears on the likelihood that he will flee and escape apprehension if not arrested immediately. But if, under all the circumstances of a particular case, an officer has probable cause to believe that the delay involved in procuring an arrest warrant will gravely endanger the officer or other persons or will result in the suspect's escape, I perceive no reason to disregard those exigencies on the ground that the offense for which the suspect is sought is a "minor" one.

As a practical matter, I suspect, the Court's holding is likely to have a greater impact in cases where the officer acted without a warrant to prevent the imminent destruction or removal of evidence. If the evidence the destruction or removal of which is threatened documents only the suspect's participation in a "minor" crime, the Court apparently would preclude a finding that exigent circumstances justified the warrantless arrest. I do not understand why this should be so.

A warrantless home entry to arrest is no more intrusive when the crime is "minor" than when the suspect is sought in connection with a serious felony. The variable factor, if there is one, is the governmental interest that will be served by the warrantless entry. Wisconsin's Legislature and its Supreme Court have both concluded that warrantless in-home arrests under circumstances like those present here promote valid and substantial state interests. In determining whether the challenged governmental conduct was reasonable, we are not bound by these determinations. But nothing in our previous decisions suggests that the fact that a State has defined an offense as a misdemeanor for a variety of social, cultural, and political reasons necessarily requires the conclusion that warrantless in-home arrests designed to prevent the imminent destruction or removal of evidence of that offense are always impermissible. If anything, the Court's prior decisions support the opposite conclusion. See *Camara* v. *Municipal Court*, 387 U. S. 523, 539–540 (1967); *McDonald* v. *United States*, 335 U. S. 451, 454–455 (1948). See also *State* v. *Penas*, 200 Neb. 387, 263 N. W. 2d 835 (1978); *State* v. *Niedermeyer*, 48 Ore. App. 665, 617 P. 2d 911 (1980), cert. denied, 450 U. S. 1042 (1981).

A test under which the existence of exigent circumstances turns on the perceived gravity of the crime would significantly hamper law enforcement and burden courts with pointless litigation concerning the nature and gradation of various crimes. The Court relies heavily on Justice Jack-

son's concurring opinion in *McDonald* v. *United States*, *supra*, which, in minimizing the gravity of the felony at issue there, illustrates that the need for an evaluation of the seriousness of particular crimes could not be confined to offenses defined by statute as misdemeanors. To the extent that the Court implies that the seriousness of a particular felony is a factor to be considered in deciding whether the need to preserve evidence of that felony constitutes an exigent circumstance justifying a warrantless in-home arrest, I think that its approach is misguided. The decision to arrest without a warrant typically is made in the field under less-than-optimal circumstances; officers have neither the time nor the competence to determine whether a particular offense for which warrantless arrests have been authorized by statute is serious enough to justify a warrantless home entry to prevent the imminent destruction or removal of evidence.

This problem could be lessened by creating a bright-line distinction between felonies and other crimes, but the Court—wisely in my view—does not adopt such an approach. There may have been a time when the line between misdemeanors and felonies marked off those offenses involving a sufficiently serious threat to society to justify warrantless in-home arrests under exigent circumstances. But the category of misdemeanors today includes enough serious offenses to call into question the desirability of such line drawing. See ALI, Model Code of Pre-Arraignment Procedures 131–132 (Prelim. Draft No. 1, 1965) (discussing ultimately rejected provision abandoning "in-presence" requirement for misdemeanor arrests). If I am correct in asserting that a bright-line distinction between felonies and misdemeanors is untenable and that the need to prevent the imminent destruction or removal of evidence of some nonfelony crimes can constitute an exigency justifying warrantless in-home arrests under certain circumstances, the Court's approach will necessitate a case-by-case evaluation of the seriousness of

particular crimes, a difficult task for which officers and courts are poorly equipped.

Even if the Court were correct in concluding that the gravity of the offense is an important factor to consider in determining whether a warrantless in-home arrest is justified by exigent circumstances, it has erred in assessing the seriousness of the civil-forfeiture offense for which the officers thought they were arresting Welsh. As the Court observes, the statutory scheme in force at the time of Welsh's arrest provided that the first offense for driving under the influence of alcohol involved no potential incarceration. Wis. Stat. § 346.65(2) (1975). Nevertheless, this Court has long recognized the compelling state interest in highway safety, *South Dakota* v. *Neville*, 459 U. S. 553, 558–559 (1983), the Supreme Court of Wisconsin identified a number of factors suggesting a substantial and growing governmental interest in apprehending and convicting intoxicated drivers and in deterring alcohol-related offenses, 108 Wis. 2d, at 334–335, 321 N. W. 2d, at 253–254, and recent actions of the Wisconsin Legislature evince its "belief that significant benefits, in the reduction of the costs attributable to drunk driving, may be achieved by the increased apprehension and conviction of even first time . . . offenders." Note, 1983 Wis. L. Rev. 1023, 1053.

The Court ignores these factors and looks solely to the penalties imposed on first offenders in determining whether the State's interest is sufficient to justify warrantless in-home arrests under exigent circumstances. *Ante*, at 754. Although the seriousness of the prescribed sanctions is a valuable objective indication of the general normative judgment of the seriousness of the offense, *Baldwin* v. *New York*, 399 U. S. 66, 68 (1970) (plurality opinion), other evidence is available and should not be ignored. *United States* v. *Craner*, 652 F. 2d 23, 24–27 (CA9 1981); *United States* v. *Woods*, 450 F. Supp. 1335, 1340 (Md. 1978); *Brady* v. *Blair*, 427 F. Supp. 5, 9 (SD Ohio 1976). Although first offenders are subjected

only to civil forfeiture under the Wisconsin statute, the seriousness with which the State regards the crime for which Welsh was arrested is evinced by (1) the fact that defendants charged with driving under the influence are guaranteed the right to a jury trial, Wis. Stat. § 345.43 (1981–1982); (2) the legislative authorization of warrantless arrests for traffic offenses occurring outside the officer's presence, Wis. Stat. § 345.22 (1981–1982); and (3) the collateral consequence of mandatory license revocation that attaches to all convictions for driving under the influence, Wis. Stat. § 343.30(1q) (1981–1982). See also *District of Columbia* v. *Colts*, 282 U. S. 63 (1930); *United States* v. *Craner, supra*. It is possible, moreover, that the legislature consciously chose to limit the penalties imposed on first offenders in order to increase the ease of conviction and the overall deterrent effect of the enforcement effort. See Comment, 35 Me. L. Rev. 385, 395, n. 35, 399–400, 403 (1983).

In short, the fact that Wisconsin has chosen to punish the first offense for driving under the influence with a fine rather than a prison term does not demand the conclusion that the State's interest in punishing first offenders is insufficiently substantial to justify warrantless in-home arrests under exigent circumstances. As the Supreme Court of Wisconsin observed, "[t]his is a model case demonstrating the urgency involved in arresting the suspect in order to preserve evidence of the statutory violation." 108 Wis. 2d, at 338, 321 N. W. 2d, at 255. We have previously recognized that "the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." *Schmerber* v. *California*, 384 U. S. 757, 770 (1966). Moreover, a suspect could cast substantial doubt on the validity of a blood or breath test by consuming additional alcohol upon arriving at his home. In light of the promptness with which the officers reached Welsh's house, therefore, I would hold that the need to prevent the imminent and ongoing destruction of evidence of a serious

violation of Wisconsin's traffic laws provided an exigent circumstance justifying the warrantless in-home arrest. See also, *e. g.*, *People* v. *Ritchie*, 130 Cal. App. 3d 455, 181 Cal. Rptr. 773 (1982); *People* v. *Smith*, 175 Colo. 212, 486 P. 2d 8 (1971); *State* v. *Findlay*, 259 Iowa 733, 145 N. W. 2d 650 (1966); *State* v. *Amaniera*, 132 N. J. Super. 597, 334 A. 2d 398 (1974); *State* v. *Osburn*, 13 Ore. App. 92, 508 P. 2d 837 (1973).

I respectfully dissent.