UNITED STATES of America

v.

Rudolfo E. HALLEY.

Cr. No. 1: CR–93–182.

United States District Court,
M.D. Pennsylvania.

Nov. 5, 1993.

Daniel Isaiah Siegel, Harrisburg, PA, for defendant.

Eric Pfisterer, Asst. U.S. Atty., Harrisburg, PA, for the U.S.

### *MEMORANDUM*

RAMBO, Chief Judge.

Before the court is the motion to suppress evidence consisting of a sawed-off shotgun, ammunition, and knife seized in the course of the warrantless arrest of Defendant in his home. On October 8, 1993, a suppression hearing was held before this court, at which one of the three arresting officers testified to the events leading up to the officers' entry into Defendants' apartment. Pursuant to the order of the court issued the same day, the parties have filed proposed findings of fact and conclusions of law. From those submissions and the testimony elicited at the suppression hearing it appears that the following facts are not in dispute.

At approximately 7:50 a.m. on the morning of February 10, 1993, the maintenance supervisor of the apartment complex in which Defendant resided observed Defendant walking on the street outside the complex with his penis exposed. Defendant was in an obviously agitated state and was yelling in Spanish. Defendant also had a sheathed knife strapped onto his belt. After the maintenance supervisor saw Defendant leave the street and enter the complex, he called and reported the incident to the Harrisburg city police.

Three officers responded to the maintenance supervisor's call; one officer, Philip Hetrick, held a conversation with the maintenance supervisor about Defendant's actions, after which all three officers entered the complex and went directly to Defendant's fourth-floor apartment. Upon arriving at the apartment, the officers observed that Defendant was inside his apartment with the door open. From the hallway Officer Hetrick was able to observe that Defendant was still yelling in Spanish and that his penis remained exposed. Without requesting Defendant's permission to enter or addressing him in any way, and without a search warrant or an arrest warrant, Officer Hetrick entered the apartment to arrest Defendant for public lewdness. Officer Hetrick removed the knife[1] from the sheath on Defendant's belt and then looked down and observed a sawed-off shotgun on a chair.[2] Defendant was placed under arrest at approximately 8:15 a.m. for the offense of public lewdness, which is a misdemeanor of the third degree punishable by a maximum of one year in prison. The justification cited for the arrest was the information received from the maintenance supervisor that Defendant had walked in a public place with his penis exposed. On September 30, 1993, Defendant was indicted for one count of possession of a firearm by a convicted felon, one count of possession of a sawed-off shotgun, and one count of possession of ammunition by a convicted felon. De-fendant responded to the indictment with the instant motion to suppress.

The government claims that two types of exigent circumstances were present to justify the officers' warrantless entry and arrest of Defendant. First, the government argues, the door to Defendant's apartment was open and from the hallway, a public space, the police officers could view Defendant inside his apartment with his penis exposed. Viewing that crime in progress, the government argues, it was entitled to enter to make the arrest and to perform a protective sweep of the area. Second, the government argues that Defendant's behavior outside and inside his apartment suggested that he was in need of immediate aid, which justified the officers' entry into the apartment and seizure of any evidence in plain view.

The court is troubled by this case. The possession of a sawed-off shotgun by a convicted felon, particularly one behaving so obviously erratically, is a serious matter. The court, however, also views the warrantless entry into an individual's home as a serious matter. There is no question that the Fourth Amendment distinguishes sharply between warrantless arrest for crimes committed in a public place in view of an officer, which are generally permissible, and warrantless arrest in the home. The United States Supreme Court has stated that "[i]t is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Welsh v. Wisconsin,* 466 U.S. 740, 748, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984) (quoting *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972)). Accordingly, a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. *Welsh v. Wisconsin,* 466 U.S. at 748, 104 S.Ct. at 2097 (citation omitted). The Supreme Court has explained the rationale

---

1. There was testimony at the hearing indicating that the knife was a relatively small utility knife, and that it was completely sheathed.

2. The Government also claimed that there was a struggle with the Defendant and that all three police officers subdued him. The court is not clear, however, as to whether the parties are in agreement about this fact.

for a warrant requirement in the context of a home search in the clearest of terms:

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support for the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.... The right of officers to thrust themselves into a home is ... a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.

*Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948) *quoted in Welsh v. Wisconsin,* 466 U.S. at 748–49 n. 10, 104 S.Ct. at 2096–97. Thus, warrantless entries by government agents into individuals' homes for the purpose of search or arrest are presumptively unreasonable. *United States v. Acosta,* 965 F.2d 1248, 1251 (3d Cir.1992).

■ There are exceptions to the Fourth Amendment requirement for a warrant. If the Government seeks to rely on the exception commonly known as "exigent circumstances," it bears the burden of establishing by a preponderance of the evidence that its entry into Defendant's apartment was justified by such circumstances. *See Payton v. New York,* 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980); *United States v. Kane,* 637 F.2d 974, 979 (3d Cir.1981). In the context of a warrantless entry into an individual's home to make an arrest, "exigent circumstances" apply only to cases in which "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Morgan,* 743 F.2d 1158, 1169 (6th Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). Recognized exigent circumstances include hot pursuit of a suspect into his home, the risk of destruction of

evidence, potential escape of suspects, and threats of physical harm to law enforcement officers or other innocent individuals. *See United States v. Velasquez,* 626 F.2d 314, 317 (3d Cir.1980).

■ In deciding this matter, this court must be guided by the United States Supreme Court's decision in *Welsh v. Wisconsin, supra,* where the Court specifically addressed the question of when exigent circumstances would justify the entry of a government agent into a person's home for a non-felony offense. There, a witness observed the defendant driving erratically, swerving off the road, and finally bringing his car to a stop in an open field. No damage to any person or property had occurred. *Welsh v. Wisconsin,* 466 U.S. at 742, 104 S.Ct. at 2093. The witness blocked the defendant's car and asked another passerby to contact the police but the defendant left his vehicle and walked home before the police arrived. After the police arrived they checked the vehicle's registration and learned that it belonged to the defendant, and then proceeded to his nearby home. Without securing a warrant, the police entered the defendant's home, presumably without consent, *see id.* at 743 & n. 1, 104 S.Ct. at 2094, arrested him for operating his vehicle under the influence of an intoxicant, and took him to the police station. Because the defendant refused to take a breath-analysis test, he was subjected to penalties in addition to those imposed for the driving offense. Ultimately, the state supreme court held that the defendant's arrest did not violate the Fourth Amendment because the officers had probable cause to arrest him and the following exigent circumstances justified their entry into his home to do so: the need for "hot pursuit" of a suspect; the need to prevent physical harm to the offender and the public; and the need to prevent destruction of evidence. *Id.* at 747–48 & n. 9, 104 S.Ct. at 2096.

The United States Supreme Court noted first its holding in *Payton v. New York, supra,* that warrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances. Recognizing that it had declined to consider in *Payton v. New York* the

scope of exigent circumstances that might justify warrantless home arrests, the *Welsh* Court noted nonetheless that in prior decisions the Court had emphasized that exceptions to the warrant requirement were " 'few in number and carefully delineated, [and the] police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.' " *Welsh v. Wisconsin,* 466 U.S. at 749–750, 104 S.Ct. at 2097 (citation omitted). Moreover, up to that point, of the limited exigent circumstances recognized, only the "hot pursuit" doctrine had been applied to arrests in the home. *Id.* at 750, 104 S.Ct. at 2097 (citation omitted). Significantly, the *Welsh* Court stated:

> Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries.... When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

> \*   \*   \*   \*   \*   \*

> [I]t is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor.... [A]n important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made. Moreover, although no exigency is created simply because there is probable cause to believe that a serious crime has been committed, *see Payton,* application of the exigent circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to

believe that only a minor offense ... has been committed.

*Welsh v. Wisconsin,* 466 U.S. at 750 & 753, 104 S.Ct. at 2097 & 2099 (citation and footnote omitted).

Applying these principles, the *Welsh* court held that there were no exigent circumstances to justify the officers' warrantless entry into the defendant's home to arrest him for the traffic offense. The Court found that the state's "hot pursuit" justification was unpersuasive because there was no immediate or continuous pursuit of the defendant from the scene of the crime. Further, the Court found no significant threat to the public safety because the defendant had arrived home. Finally, insofar as the defendant's diminishing intoxicant blood level posed a threat of destruction of evidence during the time it would have taken to obtain a warrant, the Court found that although the offense of driving under the influence of intoxicants was of major state concern, it was not serious enough to justify a warrantless arrest. On this point, the Court significantly noted that although the defendant was charged with a criminal misdemeanor because it was his second driving under the influence offense, the state classified first-time driving under the influence offenses as noncriminal. Since the officers did not know when they entered the defendant's home that he had a prior offense, it was necessary to assume that they were investigating and arresting him for the lesser offense. *Id.* at 753–54 & 746 n. 6.

The court is aware that the instant circumstances present a more complicated set of facts and concerns than those presented to the *Welsh* Court. Unfortunately, further research disclosed no pertinent decisions of the Third Circuit Court of Appeals that considered exigent circumstances or misdemeanor offenses similar to those of the instant case. Nonetheless, the court believes that two cases in which the Third Circuit Court of Appeals considered warrantless home arrests for felony crimes provide additional guidance for the instant matter.

In *United States v. Acosta,* 965 F.2d 1248 (3d Cir.1992), the Third Circuit Court of Appeal held that exigent circumstances justified a warrantless entry, search, and arrest

when officers armed with an arrest warrant for one individual ultimately arrested other individuals encountered in the course of their search for the warranted individual. There, officers seeking to arrest a suspect for felony drug violations went to an apartment house listed on the arrest warrant. Uncertain as to the exact apartment in which the suspect might be found, one officer knocked on the door of the first floor apartment and announced that police officers were there with a warrant. After hearing scuffling and a toilet flushing, *and* being informed by an officer stationed outside of the building that drugs were being thrown out of a window of the apartment, the officers forced open the door. Once inside, the officers observed drugs and paraphernalia in plain view and, pursuant to a protective sweep of the area, found weapons, large sums of cash and additional drugs and paraphernalia. The occupants of the apartment were arrested and charged with felony drugs and weapons violations. *Id.* at 1253. The suspect was not among the occupants. The evidence obtained in the search was not suppressed, however, because the arresting officers were presented with substantial indicia that a drug felony was in progress and that the suspects were in the process of destroying the evidence.[3]

On the other hand, in *United States v. Velasquez*, 626 F.2d 314 (3d Cir.1980), the Third Circuit Court of Appeals ruled that evidence should have been suppressed in a case where the arresting officers had certain knowledge that a felony drug violation was about to be committed. There, an undercover officer who had purchased drugs from the defendant previously was in the defendant's home on the brink of consummating another drug transaction when his fellow officers burst into the residence and conducted a warrantless search and arrest. Despite the known involvement of the defendant in the previous felony drug transaction and the imminence of the second transaction, the court

ruled that suppression was proper because the government had presented no objective indicia that evidence was about to be destroyed, suspects were going to try to escape, or that the undercover agent was in danger. *Id.* at 316–17. With respect to the potential danger to the agent, the court noted that the situation was not one in which "there was ... a substantial likelihood of bloodshed or an impending siege if quick action were not taken." *Id.* at 318 (quoting *United States v. Shye*, 492 F.2d 886, 892 (6th Cir.1974)).

The principles set forth in *Welsh v. Wisconsin* and the reasoning applied by the Third Circuit in the felony cases discussed, *supra*, persuade this court that suppression of the weapons and ammunition is required in the instant case. To justify the warrantless intrusion into Defendant's home in the instant case, the Government relies first upon the officers' observance of a crime in progress and, second, their concern that Defendant needed immediate care. The reasonableness of the arresting officers' belief about the seriousness of the situation must be evaluated objectively in light of the facts and circumstances then known to them. *Scott v. United States*, 436 U.S. 128, 137, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). The facts established by the government show that three police officers were faced with an individual previously unknown to them who was alone inside his apartment, yelling, wearing a small sheathed knife, and with his penis partially exposed to view. Prior to entering the apartment, the officers did not know that Defendant was a convicted felon or that he possessed a sawed-off shotgun. They could not see the shotgun from the hallway. They knew only that they wanted to arrest him for the third-degree misdemeanor offense of public lewdness.[4]

The court is mindful that the police officers believed they were viewing the occurrence of an ongoing crime inside of Defendant's home. Bearing in mind that the gravity of the offense is an important factor in determining

---

**3.** The finding of exigent circumstances even in *Acosta* remains difficult, given the question of the government's creation of the exigent circumstances relied upon. *See Acosta*, 965 F.2d at 1257–62 (Cowen, J., dissenting).

**4.** It is not a crime, to this court's knowledge, to wear a sheathed knife or to yell in one's home and, in any case, the government did not arrest or charge him for offenses related to those actions.

whether warrantless entry was justified, the court notes that the gravity of the public lewdness in this situation is arguable. In view of the fact that it was occurring in Defendant's home when the officers arrived on the scene, it was not a crime that posed an imminent serious threat to others.[5] Moreover, if anyone other than the officers had happened past Defendant's door so as to become "victims" of the crime, such persons would have been able to remove themselves from the peril posed by the offense quite easily.

Furthermore, for the purposes of this inquiry, the court is not persuaded that Defendant's offense is more serious than the offense of driving under the influence which was involved in the *Welsh v. Wisconsin* case. Admittedly, the offense level and potential sentences for public lewdness are higher; nonetheless, it might be argued that intoxicated drivers pose a more serious threat to public safety than an individual engaging in public lewdness. Without making that determination here, the court holds that the seriousness of the offense that the officers observed[6] and for which they sought to arrest Defendant does not supply the "exigent circumstance" necessary to justify the officers' warrantless entry into Defendant's home. As the *Welsh* court stated, *supra,* when the government's interest is only to arrest for a minor offense, the presumption of unreasonableness that attaches to warrantless home entries is difficult to rebut.

The officers in this case had other alternatives to warrantless entry. There was no reason to suspect that Defendant would attempt to escape and, of course, there was no threat of destruction of evidence, given the nature of the offense. Moreover, Defendant was in his home when the police arrived at the apartment complex; thus, the police were not in "hot pursuit" from a public place. Given these undisputed facts, the court cannot say that the inevitable delay incident to obtaining a warrant should have given way to an urgent need for immediate action.[7] The officers might have announced their presence, told Defendant to clothe himself properly and then sent one officer to obtain a warrant for his arrest while another remained at the apartment complex. They might have announced their intentions and requested that Defendant exit from his apartment. If they were concerned about the safety of the Defendant or the public,[8] once again they had the option of sending one officer to obtain a warrant while another remained at the apartment complex. The events occurred at approximately 8:00 a.m., a time of day at which it would have been comparatively quick and easy to obtain a warrant.

Although the court understands the officers' concern for the situation involving Defendant, it simply did not contain the convergence of compelling circumstances that have led other courts to hold that exigent circumstances justified a warrantless search or arrest in an individual's home. All told, the

5. In fact, it is unclear whether Defendant was ever convicted of the crime of public lewdness or whether, absent Defendant's exposure on the street outside of the apartment complex, he could have been convicted of that crime.

6. The government argues that "what a person knowingly exposes to the public, even in his own home, is not a subject of Fourth Amendment protection." Government's Brief, at 3. That argument would fare better if the sawed-off shotgun were the object that was exposed through Defendant's open door. As the government's brief explicitly states, however, it was Defendant's penis that was exposed.

7. *See supra* at 5.

8. The court notes that the government relies upon *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), for the proposition

that a warrantless entry was justified by the officers' belief that Defendant was in need of immediate aid. That case offers little support for the government's position. *Mincey* involved an unwarranted entry and search when officers burst into the defendant's home upon the murder of one undercover police officer and wounding of two others inside the house. Obviously, the concern for human safety that justified the warrantless entry in *Mincey* was of a kind and degree quite inapposite to the case at bar. Moreover, most of the evidence in that case *was* suppressed on the grounds that it had been gathered in the course of subsequent warrantless entries in the days following the initial entry, at which time the officers would have had the time and opportunity to obtain a warrant.

officers' concerns, though justified, must be balanced against their available alternatives to warrantless entry and, most important, society's critical right to be free from unwanted government intrusion into the homes of individuals. In this situation, the balance weighs against the officers' intrusion. An appropriate order will be entered.

### ORDER

In accordance with the accompanying memorandum, IT IS **HEREBY ORDERED THAT** Defendant's motion to suppress evidence is **GRANTED.**