[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This is an appeal from a judgment of the Sylvania Municipal Court which, following a no contest plea, found appellant Jennifer Cellura guilty of driving a motor vehicle while under the influence of alcohol in violation of Sylvania Codified Ordinance 333.0(a)(1).
On appeal appellant sets forth the following four assignments of error:
 "I. THE APPELLANT'S ARREST WAS A VIOLATION OF THE APPELLANT'S FOURTH AMENDMENT RIGHT, PURSUANT TO THE UNITED STATES CONSTITUTION, AS THE INVESTIGATION AND ARREST WAS [SIC] NOT BASED UPON A REASONABLE AND ARTICULABLE SUSPICION THAT THE APPELLANT WAS OR HAD BEEN ENGAGED IN CRIMINAL ACTIVITY . . .
 "II. THE WARRANTLESS SEARCH OF THE APPELLANT'S AUTOMOBILE WAS A VIOLATION OF HER FOURTH AMENDMENT RIGHT PURSUANT TO THE UNITED STATES CONSTITUTION AND ALL EVIDENCE OBTAINED FROM THIS POINT SHOULD BE EXCLUDED AS `FRUIT OF THE POISONOUS TREE.'. . . .
 "III. THE WARRANTLESS HOME ARREST OF THE APPELLANT WAS A VIOLATION OF HER FOURTH AMENDMENT RIGHT PURSUANT TO THE UNITED STATES CONSTITUTION AND ALL EVIDENCE OBTAINED FROM THIS POINT SHOULD BE EXCLUDED AS `FRUIT OF THE POISONOUS TREE.'. . . .
 "IV. HAVING FAILED TO READ THE APPELLANT HER MIRANDA RIGHTS ALL CUSTODIAL STATEMENTS TAKEN FROM HER WERE IN VIOLATION OF HER CONSTITUTIONAL RIGHTS AS GUARANTEED UNDER THE FOURTH, FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION."
The facts which are relevant to the issues raised on appeal are as follows. On September 9, 1996, appellant was arrested and charged with driving a vehicle while under the influence of alcohol, in violation of Sylvania Codified Ordinance333.01(a)(1), and leaving the scene of an accident, in violation of Sylvania Codified Ordinance 335.13.
On December 10, 1996, appellant filed a motion to suppress the results of any "[t]ests of [her] coordination and/or sobriety," and any statements she had made to police. In support thereof, appellant argued further that any "custodial statements" she may have made to police were obtained in violation of her constitutional rights under the Fourth, Fifth, Sixth andFourteenth Amendments of the Constitution of the United States. On February 12, 1997, a suppression hearing was held, at which testimony was presented by Sylvania City Police Detective Mike Yunker. Yunker testified at the hearing that he was on patrol on September 9, 1995, when he was notified by the police dispatcher at approximately 12:15 a.m. that an unidentified resident of an apartment complex had reported a late model, black vehicle striking an embankment of railroad ties on Cornwall Court in Sylvania, Ohio, and then leaving the scene of the accident. Yunker further testified that he and another officer, Josh Seney, arrived at Cornwall Court, surveyed the damage to the railroad ties, and were told by unnamed witnesses that the car possibly had been driven by a "young boy." Yunker testified that he and Seney proceeded to search for the black vehicle and, shortly thereafter, they found a black Neon parked in front of a building in the Wickford Green apartment complex, less than one quarter of a mile away. The hood of the Neon was warm, there was steam coming off the vehicle, and its rear end had what appeared to be "fresh damage" that corresponded to the damage done to the railroad ties. Yunker stated that the Neon was not registered to anyone living in the Wickford Green complex. However, Yunker stated that he looked inside the Neon, saw an envelope on the dash and, upon discovering that the Neon was unlocked, he went inside and read the address on the envelope, which corresponded to a building immediately in front of the parked car.
Yunker further testified that when he and Seney went to the apartment listed on the envelope appellant, who was talking to someone on the telephone, opened the door. The officers stood just inside the apartment door while appellant continued to talk on the phone. Yunker stated that appellant asked him to speak to the other party on the phone, which he did, after which he told appellant to hang up the phone.
Yunker testified that when appellant opened the door he noticed that she had a "very very strong odor of alcohol beverage upon her breath." He also noted that her speech was slurred, she was unsteady on her feet, and she generally appeared to be "under the influence of alcohol." He further testified that when he asked appellant for her driver's license, she had trouble locating her purse, even though the purse was clearly visible on a nearby table.
Yunker testified that appellant was not placed under arrest while she was in the apartment, she did not object to the officers' presence, and she did not ask them to leave the apartment at any time. He stated that appellant told him she had been driving the Neon earlier that evening and had struck "something" with the car, although she did not know what it was. Yunker further stated that appellant voluntarily accompanied the officers to the parking lot where they surveyed the damage to the Neon. He stated that when he asked appellant to perform a field sobriety test in the parking lot she failed several portions of the test; however, he did not ask her to complete other portions because she was too unsteady on her feet.
Yunker testified that after appellant took the sobriety test, he placed her under arrest and read Miranda rights to her before transporting her to the Sylvania police station. He stated that at no time did he or Seney draw a weapon, they used no force to enter appellant's apartment or to get her to make statements to them, and they never saw appellant actually drive the car or take a drink.
At the conclusion of Yunker's testimony, the trial court found that the telephone tip was proper, appellant was driving the vehicle and that she did not own the vehicle, "efforts to obtain [appellant's] address were certainly reasonable under the circumstances," and Miranda warnings were not required at the point when the officers questioned appellant at her home. Finally, the trial court stated that "I feel all acts were reasonable, that the evidence obtained by the Officer was clearly sufficient to warrant a finding of probable cause at that point." Accordingly, the trial court denied appellant's motion to suppress.
Appellant subsequently entered a plea of no contest and was found guilty of the charge of driving a vehicle while under the influence of alcohol. The charge of leaving the scene of an accident was dismissed. On March 13, 1997, appellant filed a timely notice of appeal.
Appellant asserts in all four assignments of error that the trial court erred by denying her motion to suppress. Generally, in reviewing a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions of the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275, citing State v. Fanning (1982), 1 Ohio St.3d 19. Where there is substantial evidence to support the factual findings of the trial court, its ruling will not be disturbed on appeal absent an error of law. DePew, supra.
Appellant argues in support of her first assignment of error that the officers did not have reasonable suspicion without the "anonymous tip" to justify conducting a warrantless search of her automobile and, subsequently, her apartment.
Generally, to warrant an initial investigative stop, a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968),392 U.S. 1, 21. Anonymous tips "may provide reasonable suspicion necessary to make an investigatory stop if sufficiently verified by police officers." State v. Halahan (1995), 108 Ohio App.3d 33,37, citing State v. Campbell (1990), 68 Ohio App.3d 688.
In this case, we need not determine whether the initial stop of appellant's vehicle was appropriate, since the Neon was already parked in the Wickford Green apartment parking lot when police found it. As to the anonymous tip, upon consideration of the foregoing, this court finds that the police officers had reasonable suspicion, independent of the information contained in the telephone tip, to believe that the vehicle in the Wickford Green parking lot was the same one which had damaged the railroad ties on Cornwall Court. Accordingly, the trial court did not abuse its discretion by denying appellant's motion to suppress based on the existence of an anonymous tip, and appellant's first assignment of error is not well-taken.
Appellant argues in support of her second assignment of error that the police officer's warrantless search of the Neon to obtain appellant's name and address was improper.
It is well-settled "that warrantless searches are `perse' unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions."State v. Kessler (1978), 53 Ohio St.2d 204, 207. One such exception is the "automobile exception." Id. In such cases, police may search a vehicle without a warrant if they have probable cause to believe the vehicle contains contraband or evidence of a crime. Id. at 208.
This court has determined that "[p]robable cause exists where the facts known to the officer would `warrant a man of reasonable caution in the belief' that the place the officer searches may contain contraband or evidence of a crime." State v.Morrison (Apr. 5, 1996), Lucas App. No. L-95-135, unreported, quoting Texas v. Brown (1983), 460 U.S. 730, 742. "In Ohio, the determination of probable cause requires a review of the `totality' of facts and circumstances known to the police officer." Id., citing State v. Ratcliff (1994), 95 Ohio App.3d 199,205.
In this case, the police officers were told by witnesses that a black vehicle had left the scene of a property damage accident. Within a brief period of time, they spotted a black Neon, less than a quarter of a mile away, which had damage consistent with the accident described by witnesses. The vehicle was warm, with steam rising from the hood, indicating that it recently had been driven. Upon discovering that the Neon was not registered to anyone living at Wickford Green apartments, police looked inside the vehicle where they saw, in plain view, an envelope on which a name and address were printed. Only then did they open the unlocked vehicle to read appellant's name and address from the envelope.
Upon consideration, this court finds that, under the totality of the circumstances in this case, the police officers had probable cause to believe that the address printed on the envelope would lead them to the person who was driving the Neon at the time of the accident. Accordingly, the trial court did not abuse its discretion by denying appellant's motion to suppress based on the officers' warrantless search of the Neon, and appellant's second assignment of error is not well-taken.
Appellant argues in support of her third assignment of error that the trial court erred by denying her motion to suppress the statements she made to the police officers while in her apartment. First, appellant asserts that the officers' warrantless entry into the apartment violated her Fourth Amendment right to be free of unreasonable searches and seizures. Second, appellant asserts that a police officer does not have the authority to make a warrantless arrest of a person for driving under the influence of alcohol or leaving the scene of an accident, unless the offense was committed in the officer's presence. Finally, appellant asserts that "absent probable cause and exigent circumstances, warrantless arrests in the home are prohibited by the Fourth Amendment of the United States Constitution."
As for appellant's first argument, the United States Supreme Court has held that "[t]he Fourth Amendment has drawn a firm line at the entrance of the house * * * that threshold may not reasonably be crossed without a warrant * * *." Payton v. New York
(1980), 445 U.S. 573, 590. An exception exists, however, when the officers' entry is authorized by consent of the occupant. Illinoisv. Rodriguez (1990), 497 U.S. 177, 183.
In this case, it was uncontested at the hearing that the police officers entered appellant's apartment only after she answered their knock and opened the door. Yunger testified that he and Seney then stepped into the apartment, and that appellant did not object to their entrance or ask them to leave. No force was used to obtain entrance, and no weapons were drawn by the officers. In addition, Yunker testified that appellant, who was speaking to a third party on the phone when she opened the door, asked Yunker to speak to the other party on the phone and explain to him what was taking place in the apartment. It was not until after Yunker spoke to the other party that he asked appellant to hang up the phone.
As for appellant's second argument, Ohio courts have held that "in order to arrest for a misdemeanor, * * * the officer must actually see the offense being committed or from the surrounding circumstances, including admissions by the defendant, be able to reasonably conclude that an offense has been committed." State v. Stacy (1983), 9 Ohio App.3d 55, 57, citingOregon v. Szakovits (1972), 32 Ohio St.2d 271.
Appellant admitted to the police officers that she had been driving the Neon, and that she had struck "something." In addition, appellant appeared intoxicated and failed field sobriety tests administered by the officers.
Appellant relies on Welsh v. Wisconsin (1984),466 U.S. 740, as authority for her third argument. In Welsh, the United States Supreme Court held that a warrantless nighttime entry into a suspect's home, for the specific purpose of arresting him for driving while under the influence of alcohol, was prohibited by the Fourth Amendment. Id. at 754. Welch is an "exigent circumstances" case. Notably, in Welsh, police officers gained entry into the house after Welsh's stepdaughter answered the door, and the issue of whether they entered with consent was not determined by the lower courts.
Welsh is distinguishable from this case in several respects. First, as set forth above, appellant answered the door herself and allowed the officers to enter. Second, the officers initially went to appellant's apartment to investigate the traffic accident, not for the purpose of arresting her for driving while intoxicated. Finally, appellant was not arrested in her apartment, but in the parking lot outside her building, after the officers determined they had probable cause to arrest her for driving while under the influence of alcohol.
Upon consideration of the foregoing, this court finds that the police officers did not enter appellant's apartment without her consent, the officers reasonably concluded from the circumstances that an offense had been committed and that appellant was involved in such offense, and Welsh, supra, is inapplicable to the facts of this case. Accordingly, the trial court did not abuse its discretion by denying appellant's motion to suppress based on the officers' warrantless entry into her apartment, and appellant's third assignment of error is not well-taken.
Appellant asserts in her fourth assignment of error that her statements to police should have been suppressed because she was not "Mirandized" prior to being questioned in her apartment by the police officers.
The Fifth Amendment to the United States Constitution provides persons with a privilege against compelled self-incrimination.Miranda v. Arizona (1966), 384 U.S. 436. In Miranda, supra,
the United States Supreme Court held that an individual must be advised of his constitutional rights when law enforcement officers initiate questioning after he has been taken into custody or otherwise deprived of his freedom in any significant way. Id.. The purpose of theMiranda warning is to ensure that the police do not coerce or trick captive suspects into confessing. Berkemer v. McCarty
(1984), 468 U.S. 420, 433. "`[U]nless and until such warnings * * * are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against [the accused].'" State v.Bucholz (1984), 11 Ohio St.3d 24, quoting Miranda, supra, at 479.
The deprivation of a suspect's freedom of movement necessary to trigger the reading of the rights is restraint to a degree associated with a formal arrest. California v. Beheler
(1983), 463 U.S. 1121, 1125; State v. Maurer (1984), 15 Ohio St.3d 239,255-256. A formal arrest or its functional equivalent exists if it appears that a reasonable person would have "no choice but to submit to the officers' will and to confess."
Minnesota v. Murphy (1984), 465 U.S. 420. The relevant inquiry in such cases is whether a reasonable person in the same situation as the accused would have considered him or herself to be in custody. Berkemer, supra. See, also, U.S. v. Goudreau (C.A. 8, 1988), 854 F.2d 1097, 1098.
In making such an analysis "`[b]oth the subjective intent of the [officer] as well as the subjective belief of the suspect are irrelevant.'" State v. Uhler (1992), 80 Ohio App.3d 113,117, quoting State v. Sublett (Nov. 7, 1990), Medina App. No. 1914, unreported. Accordingly, Ohio courts have found that the "inherently coercive" atmosphere of a custodial interrogation can occur even if a suspect is questioned in his home if he is thereby "deprived of his freedom of action in a significant way." State v.Steers, (May 14, 1991), Greene App. No. 89-CA-038, citing Orozcov. Texas (1969), 394 U.S. 324.
As previously stated, in this case, appellant opened the door for the officers, asked Yunker to speak to a third party on the phone, and voluntarily accompanied the officers to the parking lot to survey the damage to the Neon. By that time the officers had ample time to observe appellant, speak to her, and conclude that there was probable cause to suspect she had driven the Neon while under the influence of alcohol. It was only after appellant was in the parking lot that she was asked to perform certain field sobriety tests. After appellant failed the sobriety tests, she was placed under formal arrest and was read her Miranda rights. She was then taken to the Sylvania police station. No additional statements were taken from appellant after she received Miranda
warnings.
This court has reviewed the entire record of proceedings which was before the trial court and, upon consideration thereof and the law, finds that a reasonable person in the same situation as appellant would not have considered herself to be in custody when the police officers questioned her at the apartment and in the parking lot. Accordingly, the trial court did not abuse its discretion by denying appellant's motion to suppress based on a violation of her Miranda rights, and appellant's fourth assignment of error is not well-taken.
On consideration whereof, this court finds further that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Sylvania Municipal Court is affirmed. Court costs of these proceedings are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ______________________________ George M. Glasser, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.