# 2000 DTA 156

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VII DE CAROLINA-FAJARDO**

IRIS MIRTA CARRASCO HERNANDEZ, FRANCISCO GUZMAN Y
LUIS ROBERTO GUZMAN CARRASCO
Demandantes-Apelantes

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO
Demandado-Apelado

Núm. KLAN-99-00304

San Juan, Puerto Rico, a 20 de junio de 2000

Panel integrado por su Presidente, el Juez Miranda de Hostos
y los Jueces Rivera Pérez y Rodríguez García

Rodríguez García, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Mediante el presente recurso de apelación, acuden ante nos Iris Mirta Carrasco Hernández, Francisco Guzmán, la sociedad legal de gananciales compuesta entre ellos, y su hijo Luis Roberto Guzmán Carrasco, solicitando que revoquemos una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Fajardo en Humacao. Mediante dicho dictamen, el Tribunal apelado desestimó su acción de daños y perjuicios por violación de derechos civiles. Resolvemos confirmar la sentencia apelada por haber sido dictada conforme a derecho.

**I. Trasfondo fáctico.**

Durante la mañana del sábado 10 de febrero de 1996, se recibió una querella por teléfono en el Cuartel de la Policía del Municipio de Fajardo informando de la muerte de un perro mediante el uso de un arma de fuego. El incidente ocurrió en una calle de la Urbanización Extensión Meléndez de Fajardo.

Para atender la referida querella, se personaron al lugar de los hechos los policías Orlando Colón Rosado (Colón) y Eduviges De Jesús Carrasquillo (De Jesús). El querellante, un vecino de la urbanización, los condujo al lugar donde se encontraba el cadáver del perro, el cual parecía haber muerto por un impacto de bala. Allí, el querellante le informó a los policías que Luis Roberto Guzmán Carrasco (Guzmán) había sido la persona que mató el perro, señalándole la casa donde vivía Guzmán.

Ante la información recibida, los policías fueron a la casa de Guzmán y lo llamaron por su nombre. La madre de Guzmán, Iris M. Carrasco Hernández (Carrasco), contestó a los policías y les informó que su hijo se encontraba dentro de su casa atendiendo una llamada telefónica. Esta preguntó porqué llamaban a su hijo y los policías le informaron lo sucedido con el perro muerto. Carrasco les informó que el dueño del rifle, un amigo de su hijo, había sido la persona que había matado el perro. Luego salió Guzmán al patio su casa, descalzo y en pantalones cortos, a hablar con los policías.

Estos informaron a Guzmán de la querella en su contra y le solicitaron que voluntariamente lo acompañaran al cuartel. Guzmán se negó y le informó a los policías que un amigo suyo había sido la persona que mató el perro con un rifle de perdigones. Ante la negativa de Guzmán de acompañar a los policías al cuartel, éstos le manifestaron a Guzmán que estaba arrestado.

Guzmán se reafirmó en su negativa de acompañar a los policías al Cuartel, y entró en su casa. El Policía Colón penetró al patio de la casa, mientras Carrasco trataba de cerrar el portón de acceso al interior de la casa y evitó que ésta cerrara el portón. Después de lograr abrir el portón, los policías le informaron a la madre, Carrasco, que estaba arrestada por obstrucción de la justicia. Aprovechando la intervención de su madre, Guzmán entró a una habitación de la casa, cerró la puerta con seguro y llamó por teléfono a un abogado.

Mientras De Jesús se encontraba con Carrasco, Colón fue a la habitación donde se encontraba Guzmán y empujando la puerta con su cuerpo la rompió, logrando acceso a la habitación. Luego procedió a arrestar a Guzmán. En la habitación donde se encerró Guzmán, no se observó ningún arma de fuego o rifle de perdigones. Carrasco y Guzmán fueron esposados por los policías y llevados al cuartel de Fajardo.

En el cuartel de Fajardo, Guzmán fue encerrado en una celda, mientras que Carrasco fue encerrada en un cuarto continuo a la celda. Más tarde, Carrasco se desmayó, por lo que fue trasladada al Centro Médico de Fajardo. Esa misma tarde, Guzmán también fue dejado en libertad.

Los policías no pudieron conseguir que un veterinario realizara la necropsia, por lo que no se obtuvo el proyectil que dio muerte al animal.

El Ministerio Público se limitó a presentar cargos contra Guzmán por infracción del Artículo 258 del Código Penal, resistencia u obstrucción a la autoridad pública, e infracción del Artículo 2, inciso B, de la Ley Núm. 67, Ley Para la Protección de los Animales. Estos cargos fueron posteriormente archivados por falta de interés del querellante, y por Guzmán no tener antecedentes delictivos previos. Además, Guzmán se disculpó ante el querellante en corte abierta. En adición, el Ministerio Público decidió no radicar cargos contra Carrasco por obstrucción a la justicia.

En 3 de febrero de 1997, Carrasco, Francisco Guzmán (Francisco), la sociedad legal de gananciales compuesta entre ellos y Guzmán presentaron una acción de daños y perjuicios contra el Estado Libre Asociado de Puerto Rico (E.L.A.) en el Tribunal de Primera Instancia, Sala Superior de Fajardo.

En la demanda se alegó que los demandantes sufrieron daños como consecuencia de las actuaciones u omisiones culposas o negligentes de funcionarios del Estado, quienes alegadamente le violaron sus derechos civiles a Carrasco y Guzmán. Los demandantes reclamaron la suma de SETECIENTOS MIL DOLARES ($700,000.00) como indemnización por los alegados daños sufridos. En 14 de julio de 1997, el E.L.A. presentó su contestación a la demanda. En la misma se alegó que los funcionarios del E.L.A. no habían incurrido en culpa o negligencia.

Después de un largo período de descubrimiento de prueba y cuatro solicitudes de sanciones contra el E.L.A. por falta de cooperación en el descubrimiento de la prueba, en 21 de octubre de 1998 se celebró el juicio en su fondo. En el comienzo del juicio, el representante legal de los demandantes, Lcdo Charles S. Hey Maestre (Hey), solicitó del Tribunal que prohibiera al E.L.A. presentar testigos durante el juicio, que se eliminaran sus alegaciones, por no haber presentado el correspondiente informe con antelación al juicio. El representante legal del E.L.A., Lcdo. Carlos H. González Román (González), manifestó que los testigos a ser utilizados por el E.L.A. durante el juicio fueron informados a los demandados en las contestaciones a los interrogatorios sometidos por los demandantes al Estado. Atendido el planteamiento entre las partes, el Tribunal declaró no ha lugar a la solicitud de la parte demandante y permitió al E.L.A. el presentar sus testigos.

Durante el juicio declararon Edgar N. García Maldonado, Guzmán, Carrasco, y Francisco, como testigos de la parte demandante, mientras que el policía Colón declaró como testigo del E.L.A. Como evidencia documental, la parte demandante presentó: (1) un requerimiento de admisiones que la parte demandante le notificó al E.L.A. y el Estado nunca contestó, (Exhibit l); ocho (8) fotografías de Carrasco (Exhibits 2-A a 2-H); dos (2) fotografías de la puerta del cuarto que fue rota por Colón (Exhibits 3-A a 3-B); copia del récord médico de Carrasco en el Hospital Subregional de Fajardo (Exhibit 4); copia del récord médico de Carrasco en el Hospital Gubern. (Exhibit 5); copia del récord médico de Carrasco que fue hecho por la Psiquiatra, Dra. Lourdes Carballo Rivera (Dra. Carballo) (Exhibit 6); Comunicación escrita de la Dra. Carballo (Exhibit 7); y copias de recibos de gastos médicos realizados por Carrasco (Exhibit 8). El ELA solamente presentó una contestación al interrogatorio preliminar (Exhibit 1 de la parte demandada) como evidencia documental.

En 28 de diciembre de 1998, el Tribunal de Primera Instancia dictó sentencia desestimando la demanda presentada en contra del E.L.A.

En resumen, el Tribunal fundamentó su decisión en que los policías Colón y De Jesús tenían motivos fundados para pensar que Guzmán había cometido un delito grave y, por lo tanto, a la luz de las Reglas de

Procedimiento Criminal, tenían autoridad legal para arrestarlo. De igual manera, resolvió que los policías actuaron dentro de sus facultades al arrestar a Carrasco por obstrucción a la justicia. En conclusión, los policías Colón y De Jesús no actuaron negligentemente al arrestar a Carrasco y Guzmán. El archivo en autos de la notificación de la sentencia se realizó en 13 de enero de 1999.

En 25 de enero de 1999, los demandantes presentaron una moción en solicitud de determinaciones de hecho y conclusiones de derecho adicionales, la cual fue denegada ese mismo día por el Tribunal.

No conforme con lo resuelto por el Tribunal de Primera Instancia, oportunamente los demandantes presentaron el presente recurso de apelación ante nos, y en el mismo alegan que el Tribunal de Primera Instancia cometió los siguientes errores:

*"A. Cometió error manifiesto el Tribunal de Primera Instancia y abusó de su discreción al desestimar la demanda y en su evaluación de la prueba, privando como resultado a las partes demandantes de sus derechos civiles y constitucionales.*

*B. Cometió error manifiesto el Tribunal de Primera Instancia en la aplicación del derecho a los hechos probados y consignados en su sentencia.*

*1. Erró el Tribunal al ignorar los principios de la Cuarta Enmienda de la Constitución de los Estados Unidos y su jurisprudencia interpretativa, incluyendo Payton v. New York, 445 U.S. 573, 586, 100 CT. 1371 (1980) y su progenie.*

*2. Erró el Tribunal de [Primera] Instancia al declarar sin lugar la solicitud de determinaciones adicionales de hechos, ignorando así la abundante prueba testifical y documental admitida.*

*C. Cometió error manifiesto el Tribunal de Primera instancia al permitir al Estado presentar prueba nunca anunciada, en perjuicio y menoscabo de los derechos sustantivos y procesales de la parte demandante."*

Con el beneficio de haber recibido las transcripciones de juicio en su fondo y el alegato en oposición del E. L.A., no encontramos en posición para resolver. Confirmamos la sentencia apelada, por ser tal dictamen conforme a derecho.

## II. El derecho.

Como primer señalamiento de error, los demandantes alegan que el Tribunal de Primera Instancia abusó de su discreción al resolver que, a la luz de la totalidad de la prueba presentada en juicio, los policías tenían motivos fundados para creer que Guzmán había cometido un delito grave. Resolvemos que este primer error no fue cometido.

Primero, es norma reiterada que un tribunal apelativo no debe intervenir con las determinaciones de hecho ni con las adjudicaciones de credibilidad que hizo el juzgador de los hechos (Tribunal de Primera Instancia), en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. *Rolón García v. Charlie Car Rental, Inc.*, 148 D.P.R. ___(1999), **99 J.T.S. 89**, pág. 1099; *Blás Toledo v. Hosp. Nuestra Señora de la Guadalupe*, 146 D.P.R. ___(1998), **98 J.T.S. 101**, pág. 1427; *Belk Alce v. Martínez*, 146 D.P.R. ___(1998), **98 J.T.S. 92**, pág. 1315; *José Garriga, Hijo, Inc. v. Condominio Marbella del Caribe Oeste*, 143 D.P.R. ___(1997), **97 J.T.S. 129**, pág. 131 en la nota al calce núm. 2; y *Mercado Rivera v. Universidad Católica de Puerto Rico*, 143 D.P.R. ___(1997), **97 J.T.S. 106**, pág. 1274. *"El fundamento de esta deferencia hacia el tribunal de [primera] instancia es que el juez inferior tuvo la oportunidad de observar toda la prueba presentada y, por lo tanto, se encuentra en mejor situación que el tribunal apelativo para considerarla."* *Sepúlveda Rivas v. Depto. de Salud*, 145 D.P.R. ___(1998), **98 J.T.S. 59**, pág. 949; *Flores Santiago v.*

*Domínguez,* 146 D.P.R. ___(1998), **98 J.T.S. 96**, pág. 1354; *Pueblo v. Dávila Delgado,* 143 D.P.R. ___(1997), **97 J.T.S. 68,** pág. 1008; y *López Vicil v. ITT Intermedia, Inc.,* 142 D.P.R. ___(1997), **97 J.T.S. 42**, pág. 838. De la lectura de las transcripciones del juicio en su fondo, llegamos a la conclusión que el Tribunal de Primera Instancia no actuó con pasión, prejuicio, o parcialidad, ni cometió error manifiesto al darle mayor credibilidad al testimonio de Colón sobre los testimonios de los demandantes.

Segundo, ante la querella del vecino y el cadáver del perro, los policías tenían motivos fundados para pensar que Guzmán había cometido un delito grave al matar un perro con un rifle, sin importar que el rifle fuera de balas o de perdigones. Esto se debe a que el artículo 5 de la Ley Núm. 17 del 19 de enero de 1951 (25 L.P.R. A. sec. 415), según enmendada y mejor conocida como la Ley de Armas de Puerto Rico, establece que *"toda persona que posea o use sin autorización de ley una ametralladora, carabina, rifle o escopeta de cañón cortado así como cualquier modificación de éstas, o cualquier otra arma de fuego que pueda ser disparada automáticamente y que pueda causar gran daño corporal, será culpable de delito grave."*

El artículo 2A de la Ley Núm. 17 (25 L.P.R.A. sec. 412a), *supra,* establece que *"no se podrá fabricar, importar, ofrecer, vender, alquilar, prestar, traspasar cualquier escopeta de aire, escopeta de muelle o cualquier otro instrumento o arma en la cual la fuerza propulsora sea un muelle o aire o cualquier instrumento o arma de los comúnmente conocidos como pistola de juguete dentro o en el cual se usen cartuchos sin balas o puedan usarse cartuchos en blanco o cargados, o municiones, a menos que se posea licencia bajo las disposiciones de las secs. 411 et seq. de este título."* En la última oración del artículo antes citado se establece que *"si las armas contempladas en esta sección son utilizadas en la comisión de un delito, se cometerá delito grave."*

Los artículos 1(a), 2(1)(a) y 9 de la Ley Núm. 67 del 31 de mayo de 1973 (5 L.P.R.A. secs. 1651(a), 1652 (1)(a) y 1659), según enmendada y mejor conocida como la Ley para la Protección de Animales, tipifican como delito menos grave el acto de golpear, patear, torturar o maltratar cruelmente a cualquier animal. En resumen, la persona que utilice un rifle o pistola de perdigones para disparar hacia un perro, comete un delito grave a la luz de la infracción combinada del artículos 1(a), 2 (1) (a) y 9 de la Ley Núm. 67, *supra,* y el artículo 2A de la Ley Núm. 17, *supra.* En conclusión, ya sea que el rifle con que Guzmán supuestamente disparó al perro realengo sea de balas o perdigones, los policías Colón y De Jesús tenían motivos fundados para creer que Guzmán había cometido allí y entonces, ese día, un delito grave.

Como primer inciso de su segundo alegato de error, los demandantes alegan que los actos de los policías al entrar a la casa de ellos por la fuerza para arrestar a Guzmán, es contrario a lo establecido en la Cuarta Enmienda de la Constitución de los Estados Unidos y al Art. II, Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico. En apoyo de su alegación, los demandante citan la opinión de *Payton v. New York,* 445 US 573, 586 (1980). Veamos.

La Cuarta Enmienda de la Constitución de los Estados Unidos establece que *"no se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos y pertenencias, contra registros y allanamientos irrazonables, y no se expedirá ningún mandamiento, sino a virtud de causa probable, apoyado por juramento o promesa, y que describa en detalle el lugar que ha de ser allanado, y las personas o cosas que han de ser detenidas o incautadas."*

El Art. II, sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico establece lo siguiente:

*"No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.*

*No se interceptará la comunicación telefónica. Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en*

*juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.*

*Evidencia obtenida en violación de esta sección será inadmisible en los tribunales."*

Nuestro Tribunal Supremo ha resuelto que las garantías reconocidas en el Art. II, Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico pueden ser más amplias que las garantías ofrecidas por la Cuarta Enmienda de la Constitución de los Estados Unidos, según ha sido interpretada por la jurisprudencia norteamericana. Por tal motivo, nuestro Tribunal Supremo ha resuelto que para efectos de interpretar las garantías ofrecidas por el Art. II, Sec. 10 de nuestra constitución, se examinarán las opiniones del Tribunal Supremo Federal relativas a la Cuarta Enmienda para indicar el contenido mínimo de las mismas. *Pueblo v. Rivera Colón,* 128 D.P.R. 672, 680-681 (1991).

En *Payton v. New York, supra,* pág. 590, el Tribunal Supremo Federal resolvió que, a la luz de la Cuarta Enmienda de la Constitución de los Estados Unidos, en ausencia de circunstancias apremiantes (exigent circumstances), no se podrá arrestar a una persona en su hogar sin una orden de arresto. Más tarde, en *Minnesota v. Olson,* 109 L Ed 2d 85, 95-96 (1990), el Tribunal Supremo Federal aclaró el significado de *"circunstancias apremiantes"* a la luz de la opinión de *Payton v. New York, supra.* En *Minnesota v. Olson, supra,* págs. 95-96, el Tribunal Supremo Federal comentó lo siguiente:

*"In Payton v. New York, the Court had no occasion to "consider the sort of emergency or dangerous situation, described in our cases as "exigent circumstances," that would justify a warrantless entry into a home for a purpose of either arrest or search, 445 US, at 583, 63 L Ed 2d 639, 100 S Ct 1371. This case requires us to determine whether the Minnesota Supreme Court was correct in holding that there were no exigent circumstances that justified the warrantless entry into the house to make the arrest.*

*The Minnesota Supreme Court applied essentially the correct standard in determining whether exigent circumstances existed. The court observed that "a warrantless intrusion may be justified by hot persuit of a fleeing felon, or imminent destruction of evidence, Welsh [v. Wisconsin), 466 US 740 (80 L Ed 2d 732, 104 S Ct 2091] [1984], or the need to prevent a suspects escape, or the risk of danger to the police or to other persons inside or outside the dwelling." 436 NW2d, at 97. The court also apparently thought that in the absence of hot pursuit there must be at least probable cause to believe that one or more of the other factors justifying the entry were present and that in assessing the risk of danger, the gravity of the crime and likelihood that the suspect is armed should be considered. Applying this standard, the state court determined that exigent circumstances did not exist."*

En el presente caso, los policías Colón y De Jesús debidamente identificados, por motivos fundados y después de haberle formulado las advertencias de rigor a Guzmán, le indicaron que estaba bajo arresto en el patio de su casa. Entonces Guzmán, advertido del hecho de que estaba siendo arrestado, caminó hacia su casa para huir de los policías, mientras Carrasco intentaba cerrar el portón, por lo cual el policía Colón corrió hacia el portón de la casa para evitar que Carrasco lo cerrara, evitando que Guzmán pudiera huir de ellos. (Transcripción del juicio celebrado en 21 de octubre de 1998, págs. 173-174, 189-190 y 198-199). Bajo los hechos antes relatados, resolvemos que se constituyó la excepción de persecución en caliente ■ (hot pursuit), por lo que los policías no tenían la obligación constitucional de solicitar una orden de arresto para poder arrestar a Guzmán. En conclusión, resolvemos que el primer inciso del segundo error alegado por los demandantes no fue cometido.

Como segundo inciso de su segundo error, los demandantes alegan que el Tribunal apelado erró al declarar *"No Ha Lugar"* la moción de determinaciones de hechos y conclusiones de derecho adicionales. De la lectura de la moción antes mencionada, resolvemos que este segundo error tampoco fue cometido. Las determinaciones de hechos realizadas por el Tribunal apelado son esencialmente correctas y completas.

Como tercer error, los demandantes alegan que el Tribunal apelado erró al permitir al E.L.A. presentar prueba testifical, cuando el E.L.A. faltó a la conferencia con antelación al juicio. Veamos,

La Regla 37.3 de Procedimiento Civil (32 L.P.R.A. Ap. II, R. 37.3) establece lo siguiente:

*"Si una parte dejare de comparecer, se negare a participar o compareciere sin estar debidamente preparada, a una conferencia preliminar al juicio o a la conferencia entre abogados, o incumpliere cualquier orden del tribunal, éste podrá desestimar la demanda, eliminar las alegaciones del demandado o dictar cualquier otra orden que fuere justa."*

De la lectura de la pasada regla, se podrá apreciar que un tribunal de primera instancia tiene la discreción de sancionar severamente a una parte que no haya comparecido a una conferencia con antelación al juicio, o de haber comparecido, no haya estado preparado. Pero, de la lectura de la jurisprudencia de nuestro Tribunal Supremo relacionada con la Regla 37.3 de Procedimiento Civil, se podrá apreciar que con la pasada regla se ha adoptado una política similar a la aplicación de la Regla 34 de Procedimiento Civil. *Garriga Gordils v. Maldonado Colón,* 109 D.P.R. 817, 822-823 (1980); *Acevedo v. Compañía Telefónica de P.R.,* 102 D.P.R. 787, 791-792 (1974); *Ramírez de Arellano v. Srio. de Hacienda,* 85 D.P.R. 823, 828-830 (1962); Rafael Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil* sec. 3506 (1997); y José A. Cuevas Segarra, *Práctica Procesal Puertorriqueña, Procedimiento Civil,* **Publicaciones J.T.S.,** pág. 198 (1985).

Es decir, que antes de imponer severas sanciones que afecten la posibilidad de una parte de llevar su acción, el tribunal de primera instancia debe: (1) sancionar de una manera menos severa al abogado de la parte o a la misma parte; y (2) llamarle la atención a la parte de que si su abogado sigue desobedeciendo las órdenes del tribunal o continúa en una actitud de no cooperación, entonces dicha parte podrá ser sancionada severamente. *Maldonado v. Srio. de Recursos Naturales,* 113 D.P.R. 494, 497-498 (1982); *Echevarría Jiménez v. Sucn. Pérez Meri,* 123 D.P.R. 664, 673-674 (1989); y *Amaro González v. First Fed. Savs.,* 132 D.P.R. 1042, 1051-1053 (1993).

En el presente caso, observamos la falta de cooperación del representante legal del E.L.A. durante el trámite del caso. Pero, aun ante las cuatro solicitudes de sanciones hechas por los demandantes, observamos que el Tribunal nunca le había impuesto una sanción poco severa al abogado del Estado, ni al E.L.A. mismo. Tampoco se le informó al supervisor del representante del E.L.A. de las actuaciones indebidas de su funcionario subalterno. Por lo tanto, el día del juicio, el Tribunal actuó correctamente al no sancionar severamente al E.L.A., prohibiendo a un testigo suyo declarar durante el juicio, por ser contrario a la política fomentada por nuestro Tribunal Supremo, máxime cuando el E.L.A. ya le había notificado a las partes demandantes, por medio de la contestación a un interrogatorio, la posibilidad de presentar a los policías Colón y De Jesús como testigos ■ y el alto costo que se le impondría al erario si no se permitieran al E.L.A. defenderse adecuadamente durante el juicio. En conclusión, resolvemos que el tercer error alegado por los demandantes no fue cometido.

## SENTENCIA

Por los fundamentos que anteceden, se confirma la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Fajardo en Humacao, en 28 de diciembre de 1998, en el caso Civil Núm. NDP 97-0008.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.

Notifíquese.

Aida Ileana Oquendo Graulau
Secretaria General