OPINION
{¶ 1} Dwain Hawkins is appealing the judgment of the Greene County Court of Common Pleas, which convicted him of possession of cocaine and trafficking in marijuana and sentenced him accordingly.
 {¶ 2} Hawkins was indicted by the Greene County Grand Jury on one count of possession of cocaine, in violation of R.C. 2925.11(A), and one count of trafficking in marijuana, in violation of R.C. 2925.03(A)(2). Hawkins filed a motion to suppress on January 28, 2002 and a supplement to the motion on March 2, 2002. A hearing was held on the motion on March 28, 2002 and April 15, 2002. The evidence from the hearing demonstrated that, on the evening of November 7, 2001, the Greene County Sheriff's Office received a phone call regarding several individuals who had been smoking marijuana in the hallway of an apartment building at 987 Old U.S. 35, just outside the city limits in Xenia, Ohio. Detective Fred Meadows of the City of Xenia Police Department responded per an interdepartmental mutual aid agreement with the Sheriff's Office. Shortly thereafter, Deputy Darren Jeffers and Officer Rittenbach responded to the scene.
 {¶ 3} Upon approaching the building, the officers were met by the complainant, who directed them to the second floor apartment. The officers detected a "strong odor" of marijuana as they entered the building, and Det. Meadows testified that the odor had become stronger as they had approached the second floor apartment.
 {¶ 4} The officers knocked and announced their presence, but no one answered the door for several minutes. Finally, Brent White opened the door to the dimly lit apartment, and the officers informed him that they were investigating a complaint of drug abuse. Det. Meadows noted that it was apparent that someone inside the apartment had been smoking marijuana "heavily." The officers asked White who the owner of the apartment was, and White pointed in the direction of Hawkins, who was laying on the couch, and mentioned something about Hawkins' "aunt."
 {¶ 5} While the officers stood in the doorway outside the apartment, they attempted to rouse Hawkins by creating a lot of noise, yelling for him to wake up, and shining a light in his eyes with their flashlights. Hawkins did not move. They also noticed what appeared to be marijuana residue, "shake," on the coffee table in front of the couch on which Hawkins was resting. Det. Meadows testified that he had become concerned for Hawkins' welfare when Hawkins had not responded, so he had asked White if they could enter the apartment to check on Hawkins' well-being. Det. Meadows stated that White had made no verbal response but that he had motioned to them as if inviting them to enter the apartment.
 {¶ 6} Det. Meadows approached Hawkins and shook him; Hawkins awoke. Det. Meadows testified that he had noticed a bag under Hawkins' leg, but at that time he had been unable to determine what was inside the bag. When Hawkins moved to a seated position, Det. Meadows determined that the bag appeared to contain marijuana, which became partially visible under Hawkins' leg. At Det. Meadows' request that he stand, Hawkins attempted to place his hands in his pant pockets. Det. Meadows immediately stopped Hawkins and conducted a pat down search for weapons. During the course of the search, Det. Meadows felt an object in Hawkins' jeans pocket that, from his experience, he believed to be crack cocaine. Upon cross-examination, Det. Meadows stated that the crack could have been a piece of candy or another small item, and that he had had to "squeeze" the pocket to determine that the item was crack cocaine. Hawkins was placed under arrest.
 {¶ 7} At some point, Det. Meadows asked Hawkins if the coat on which he was sitting belonged to him; Hawkins replied affirmatively. Det. Meadows testified that he had inquired about the coat before Hawkins stood up. The police report, completed by Officer Jeffers, indicated otherwise, stating that he found the wrapped cocaine in Hawkins' front right pocket. The report further states, "At that time the subject was placed under arrest. Officer Meadows asked whos[e] coat was on the sofa and the man stated its mine." After finding the crack cocaine, Det. Meadows searched the coat and found some plastic baggies and a small finger scale.
 {¶ 8} The trial court filed its decision on June 20, 2002, overruling Hawkins' motion to suppress in its entirety. We note that the day the decision was filed was Judge Rose's last day as a judge in the Greene County Court of Common Pleas before leaving to sit on the federal bench. Hawkins filed a motion for specific findings of fact on June 28, 2002; however, this was overruled by the visiting judge on July 17, 2002.
 {¶ 9} Hawkins pled no contest and was sentenced to community control with a mandatory six-month license suspension. He now appeals the trial court's decision, asserting eight assignments of error. We will address Hawkins' first four assignments of error simultaneously, as they all concern whether any of the exceptions to the warrant requirement applied in this instance and are dispositive of this case.
 {¶ 10} Hawkins' first assignment of error:
 {¶ 11} "The court erred in not suppressing all evidence obtained from the Appellant because the entry into said apartment was without a warrant and none of the exceptions to the warrant requirements exist."
 {¶ 12} Hawkins' second assignment of error:
 {¶ 13} "The plain view exception to the warrant requirement is not applicable in this case."
 {¶ 14} Hawkins' third assignment of error:
 {¶ 15} "The court erred if it found that the officers had permission to enter the premises."
 {¶ 16} Hawkins' fourth assignment of error:
 {¶ 17} "The exceptions to the warrant requirement when there is concern about the well being of the occupant is not applicable in this case."
 {¶ 18} In these assignments of error, Hawkins argues that his Fourth Amendment rights were violated when the officers made a warrantless entry into the apartment without the circumstances falling within one of the well-recognized exceptions to the warrant requirement.
 {¶ 19} Preliminarily, we note that when a trial court considers a motion to suppress, it serves as the trier of fact and is the primary judge of the weight of the evidence and the credibility of witnesses.State v. Fanning (1982), 1 Ohio St.3d 19, 20. When reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's findings if they are supported by competent, credible evidence. State v. McNamara (1977), 124 Ohio App.3d 706, 710. The appellate court must also rely upon the trial court's ability to assess the credibility of the witnesses. State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 20} Under the Fourth Amendment, a warrantless entry and search of a private residence is presumptively unreasonable. Payton v. New York
(1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639; Welch v. Wisconsin
(1984), 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732. Invasion of the sanctity of the home is the chief evil against which the Fourth Amendment's warrant requirement is directed. United States v. UnitedStates District Court (1972), 407 U.S. 297, 92 S.Ct. 2125,32 L.Ed.2d 752. The government must overcome the presumption that warrantless searches of homes are per se unreasonable by demonstrating that the search falls within one of the few, well-recognized exceptions to the warrant requirement. Welsh v. Wisconsin, supra; State v. Kessler (1978),53 Ohio St.2d 204, 373 N.E.2d 1252.
 {¶ 21} The United States Supreme Court has defined one such exception in holding that the police may enter a premises without a warrant based upon the consent of a third party whom the police reasonably believe possesses common authority over the premises.Illinois v. Rodriguez (1990), 497 U.S. 177, 181.
 {¶ 22} In reviewing the record, the police officers in this case had no knowledge of White at the time of entry and made only feeble attempts prior to their entrance into the apartment to determine whether White possessed authority over the premises and whether he had any authority to admit them. In fact, the officers had knowledge that White was not the owner of the apartment, as White had motioned towards Hawkins and said that the apartment belonged to Hawkins' aunt. Accordingly, we find that there was no valid consent for the police officers to enter and search the residence.
 {¶ 23} In addition to consent being a valid basis for a warrantless entry, the Fourth Amendment does not bar police officers from making a warrantless entry when they reasonably believe that an individual within the residence is in need of immediate aid. State v.Applegate, 68 Ohio St.3d 348, 349-350, 626 N.E.2d 942, 1994-Ohio-356, citing Mincey v. Arizona (1978), 437 U.S. 385, 392, 98 S.Ct. 2408, 2413.
 {¶ 24} In this case, we find that the State failed to meet its burden of proving that the officers had a reasonable belief that Hawkins, who was laying on the couch at 9:30 p.m., was in immediate danger inside the residence. The officers were dispatched to the scene where individuals were allegedly smoking marijuana in the common hallway of an apartment building. At approximately 9:30 p.m., the officers approached the apartment where the individuals had relocated, and they noticed Hawkins lying on the couch. Because there was much noise and activity, and because Hawkins did not respond to the different methods the officers used to rouse him, the officers entered the apartment, believing that Hawkins might be "in trouble."
 {¶ 25} We do not find it unreasonable that Hawkins was asleep on the couch at 9:30 p.m. Under the circumstances, we do not believe this evidence showed an "urgent need" sufficient to justify violating the privacy of a private residence without a warrant. Hawkins may have been "passed out," but he was doing so in his aunt's home, the sanctity of which is protected by the Fourth Amendment.
 {¶ 26} Finally, the State relies on the plain view exception to support the trial court's decision denying the motion to suppress. The State asserts that, because the drugs were in plain view under Hawkins' leg, a valid exception to the warrant requirement permitted them to enter. We do not agree.
 {¶ 27} The warrantless seizure by a law enforcement officer of an object in plain view does not violate the Fourth Amendment if (1) the Fourth Amendment was not violated by the officer in arriving at the place from which the object could be plainly viewed, (2) the officer has a lawful right of access to the object, and (3) the incriminating nature of the object is immediately apparent. Horton v. California (1990),496 U.S. 128, 136-137, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112, 122-123. The pivotal controversy before us is within the first criterion of the plain view doctrine, i.e., that the seizing officer attain his vantage point in compliance with the Fourth Amendment.
 {¶ 28} As we stated in the above discussion, the Fourth Amendment was implicated by the officers' entry into the apartment. The officers' entry into the apartment was not made in conformity with either the Fourth Amendment consent doctrine or the exigent circumstances doctrine. As no other exception to the warrant requirement existed, the officers' warrantless, nonconsensual entry violated the first criterion of the plain view doctrine, and thus it does not apply in this instance.
 {¶ 29} Hawkins' first four assignments of error are well-taken, as we find no competent, credible evidence to support the trial court's decision to overrule the motion to suppress.
 {¶ 30} The fifth, sixth, seventh and eighth assignments of error are hereby rendered moot by our disposition of the first four assignments of error.
 {¶ 31} The judgment of the trial court is reversed, and the conviction and sentence are vacated.
BROGAN, J. and GRADY, J., concur.