**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**James Lynn JOHNSON, Defendant–
Appellee.**

No. 03–1301.

United States Court of Appeals,
Sixth Circuit.

Aug. 5, 2004.

Joan E. Meyer, U.S. Attorney's Office, Grand Rapids, MI, for Plaintiff–Appellant.

Christopher P. Yates, Willey, Chamberlain & Yates, Paul L. Nelson, Paul J. Denenfeld, Federal Public Defenders Office, Grand Rapids, MI, for Defendant–Appellee.

Before: SUHRHEINRICH, BATCHELDER and COLE, Circuit Judges.

SUHRHEINRICH, Judge.

The United States appeals the district court's order granting Defendant James Johnson's motion to suppress a shotgun found during a warrantless search of his residence. The appeal is taken pursuant to 18 U.S.C. § 3731. We **REVERSE**.

## I.

On the night of July 4, 2002, officers of the Grand Rapids police department responded to a report that a man was firing a shotgun from a porch of a home on Sigsbee in Grand Rapids, an area of two-story homes. The dispatch report indicated residents of the home included children. On arriving, officers saw a black male sitting on the front porch of 813 Sigsbee with a long gun on his lap. He was wearing a jersey bearing the number 05 and a bandana. As the officers watched, the man stood up, discharged the firearm into the air twice, and then reloaded it. The officers then heard someone say "police," and

saw the man quickly turn and flee into the house through the front door.

The officers requested backup. Within minutes more officers arrived and surrounded the house. Several officers approached the front door and knocked numerous times, shouting to the occupants to answer the door. Although they heard muffled voices and rustling noises from within, the officers did not receive an answer. Not knowing the number of occupants in the house, whether they included children or if they had been taken hostage, or the identity of the shooter and whether he also lived there, the officers forced open the front door and entered the residence.

Upon entry, the officers immediately observed a shirtless, bareheaded black man, who was later identified as the shooter, and a woman in the kitchen area. The officers did not see the gun. Two officers immediately ran upstairs to search for the armed suspect and to determine if there were other occupants. In the meantime, other officers secured the man and the woman, having them lie on the living room floor, and then searched the remainder of the main floor for the armed suspect or additional occupants. During this search, and less than one minute after entry, officers discovered a loaded 12–gauge semiautomatic shotgun in a large pantry closet, adjacent to the kitchen, approximately eight to fifteen feet from where the man and woman had been found. The shotgun was within plain view when the closet door was opened. A short time later, the "05" jersey was found on the living room floor. No other persons were found in the home. This search lasted just two to three minutes.

Johnson was arrested at that point for violating state misdemeanor laws and city ordinances. The officers did not obtain an arrest warrant before entering the home to arrest Defendant. Nor did the officers obtain a search warrant prior to searching the house.

At the time of his arrest, the officers did not know Defendant was a convicted felon. Upon that discovery, on July 25, 2002, he was indicted on federal charges for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On February 25, 2003, Defendant filed a motion to suppress the gun evidence, arguing that the shotgun was found in an unconstitutional search and seizure. After a hearing, the district court granted Defendant's motion. The United States appeals.

## II.

This Court reviews a district court's ruling on a suppression motion under a mixed standard of review. *United States v. Akridge*, 346 F.3d 618, 622 (6th Cir.2003). The district court's factual findings are reviewed for clear error, but we review its conclusions of law *de novo. Id.*

## III.

In a confusing bench ruling that cited no authority, the district court initially concluded that the warrantless entry was justified because the officers "had the right to pursue the individual to reasonably ascertain who it was and make an arrest for the misdemeanor committed in their presence." The district court then found that officers determined "very quickly" that Defendant was the shooter. The court noted that, although Defendant was barechested, the jersey he had been wearing was lying on the floor. The district court also found that there was no reason to believe that there was anyone else in the house. Because the district court viewed this case as one involving a "protective sweep" to search for a weapon following an arrest, and because the arrest was for a misdemeanor and not for a felony, the

court ruled that the warrantless search for the gun was unconstitutional. The court therefore suppressed the shotgun.

■ First, we think the district court misunderstood the nature of the protective sweep doctrine. Under the protective sweep doctrine, officers may quickly look into closets and other places in close proximity to the place of an arrest, after they have secured a suspect, to search for other persons who could launch an attack. *See Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). This may be done as a mere precaution and officers need not have reasonable suspicion or probable cause to do so. *Id.* Protective sweeps, therefore, generally involve searches for persons other than an arrestee. The district court cited no authority, and we have found none, to support the view that a protective sweep—under circumstances in which the officers have observed the suspect firing and reloading a shotgun and then fleeing into the house, the occupants of which are unknown to the officers—would be unconstitutional simply because the eventual arrest was only for a misdemeanor. However, searches of places within the arrestee's immediate area of control to find weapons are also permissible to protect officers from an arrestee who might gain possession of a nearby weapon. *See Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

Thus, even if the officers believed that they "had their man" when they seized defendant, they still had the authority to conduct a protective sweep to search for other persons. And, they were authorized to search the immediate vicinity for weapons. Here, the pantry closet was both large enough to hide a man and near enough to be accessible to Defendant. Under such facts, the officers would have discovered the shotgun during a valid protective search. It therefore would have been admissible under the protective sweep doctrine.

■ Nevertheless, we think this case is better characterized as one involving a search *for a suspect* where a gun was found in plain view incident to that search. We view the facts of this case as falling within the hot pursuit and risk of danger exceptions to the warrant requirement. The Fourth Amendment to the United States Constitution protects the people "against unreasonable searches and seizures." U.S. Const. amend. IV. Absent exigent circumstances, warrantless searches and warrantless seizures of evidence within a home are presumptively unreasonable. *Payton v. New York,* 445 U.S. 573, 587–88, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The exigent circumstances permitting warrantless entries of homes generally fall into four categories: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *United States v. Rohrig,* 98 F.3d 1506, 1515 (6th Cir.1996) (citing *United States v. Johnson,* 22 F.3d 674, 680 (6th Cir.1994)).[1]

1. In *Rohrig* we recognized that these are not the only exigencies. *Rohrig,* 98 F.3d at 1521. When one of the traditional exigent circumstances does not exist, warrantless entries into a home may nevertheless be justified by examining "(1) whether immediate government action was required, (2) whether the governmental interest was sufficiently compelling to justify a warrantless intrusion, and pelling to justify a warrantless intrusion, and (3) whether the citizen's expectations of privacy was diminished in some way." *Id.* Here, immediate action was required because an armed man, who had already fired the shotgun and reloaded it, then fled into a house thought to be occupied. It was a compelling governmental interest to protect the occupants from harm, especially if they were children, as reported. And, defendant's expecta-

Importantly, seizures of items that are in plain view and made after entries under exceptions to the warrant requirement are legitimate. *See Horton v. California,* 496 U.S. 128, 134–35, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 465–66, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)).

Here, the district court found that the officers determined "very quickly" that Defendant was the shooter, as if officers had immediately arrested Defendant and had no reason to look for anyone else. However, Defendant was only recognized as the shooter *after* the police determined no other persons were in the house and the shotgun had already been found. Upon entry, the man discovered in the kitchen was shirtless, bare-headed, and unarmed. Thus, there was ample reason for the officers to believe the actual suspect might be someone other than the arrestee and that he was somewhere else in the home. Indeed, it was entirely appropriate for the police to immediately continue looking for an armed man fitting the description of the man they had seen flee into the home. Moreover, although Defendant was secured immediately after entry into the home, no testimony established the timing of Defendant's arrest as the perpetrator prior to the continuation of the search for the suspect. In fact, when asked on cross-examination whether they were looking for the gun, one officer testified that he was looking for armed suspects or victims, thereby denying that he had been searching for the gun. The other officer also never testified that he had been searching for the gun, indicating instead that he was searching for other people including "victims and casualties." In sum, the district court's ruling is based on

two erroneous factual assumptions: (1) that the officers knew immediately that they had the gunman, and (2) therefore, if they kept searching it must have been to look for the weapon. The facts clearly do not support such assumptions.

The facts instead support application of the first category of exigent circumstances—hot pursuit. *Warden v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (involving hot pursuit of an armed felon into an occupied home). As our Supreme Court has made plain, "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Id.* at 298–99. The *Hayden* Court also made clear that the permissible scope of a search for an armed suspect in a home must at least "be as broad as may reasonably be necessary to prevent the dangers that the suspect in the house may resist or escape." *Id.* at 299. Although the Supreme Court has focused on the nature of the crime and upheld warrantless entries into homes in search of felons, as in *Hayden,* it has not completely foreclosed the possibility that such entries may be made to search for misdemeanants. *See, e.g., Welsh v. Wisconsin,* 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (noting that such entries are "rarely" sanctionable for minor offenses). Thus, the fact that this case involves the commission of misdemeanors, rather than the more usual situation involving felonies, does not render the hot pursuit doctrine inapplicable.

As in *Hayden,* this case involves the seizure of evidence found during a search for an armed suspect in the home into which he had fled after committing a crime. The police were not sure the man

---

tion of privacy was diminished because he had fired his weapon outdoors where any

passerby could witness his unlawful conduct.

in the kitchen was the suspect they were looking for and reasonably continued their search for the suspect. Opening the door to a large pantry closet to look for him was reasonable because the closet was large enough to hide a man. The shotgun was in plain view once the door was opened. Thus, the warrantless entry in search of the suspect was constitutional under the exigency of hot pursuit. Because the shotgun was found and seized incident to the search for the gunman, as was the evidence in *Hayden,* it is admissible evidence. *See also Horton,* 496 U.S. at 134–35; *cf. United States v. Bass,* 315 F.3d 561, 564 (6th Cir.2002).

■ Additionally, the fourth category of exigent circumstances—when there is a risk of danger to the police or others, *see Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990)—also applies here. Under the circumstances of this case, the officers had ample justification for fearing for their own safety and especially the safety of others who might now be in the house with this reckless gunman. There had been a report of a man firing a gun from the porch in a residential neighborhood and that children resided there. Officers who responded to the call observed a man recklessly fire two shots into the air, reload the shotgun, and then flee into the house. The officers did not know whether the man lived at the house, whether there were other occupants inside, or whether such occupants were hostages. The man had already demonstrated his willingness to repeatedly fire

the shotgun and had apparently fled into the house only upon becoming aware of the police. That the man turned and fled into the home armed, rather than dropping the weapon and talking to the officers, created the potential for the incident to escalate into a deadly confrontation that could have involved hostage-taking. From the officers' vantage point, this was a dangerous situation. Police are not required to wait for injury or death to occur in their presence before acting to protect people from a gunman who has amply demonstrated his propensity to use his weapon. Thus, the risk of danger was an exigent circumstance that also amply justified the officers' warrantless entry into the house and the seizure of the shotgun was permissible under *Horton.*

In sum, on these facts, we hold that the shotgun should not have been suppressed.[2]

## IV.

For the foregoing reasons, we **REVERSE** the district court's order granting Defendant's motion to suppress and **REMAND** the case to the district court for further proceedings.

COLE, Circuit Judge, dissenting.

The officers in this case violated Johnson's Fourth Amendment rights by entering his home without a warrant or permission. The majority concludes that this entry was justified by exigent circumstances. But such a conclusion is not supported by the law or the facts of this case.

---

**2.** Even if the search in this case was unconstitutional, however, the shotgun is admissible evidence because it inevitably would have been discovered by lawful means. *See Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *United States v. Kimes,* 246 F.3d 800, 804–05 (6th Cir.2001). The officers had probable cause to believe that the shotgun was in the house because

they had witnessed Defendant shoot it from the porch, reload it and then flee into the house with it. Had it not been found in the search for the suspect, the officers would have obtained a warrant after they secured the house. Inevitably, they would have found the shotgun upon opening the pantry closet door. Thus, application of the exclusionary rule would not be appropriate here.

The officers knew the following things: That discharging firearms into the air is common, albeit dangerous and illegal, on the Fourth of July, and that they had had various other such incidents reported that day; that a neighbor had reported a man firing a shotgun into the air from his porch; that the neighbor reported both that the man lived at the house and that there were children who lived there; that Officer Bauer saw Johnson fire the gun into the air; that Officer Bauer heard Johnson to "say 'police' or something to that effect" before retreating into the house; and that discharge of a firearm within city limits is a misdemeanor city ordinance violation.

The officers certainly could have arrested Johnson even without a warrant because one of the officers had observed Johnson violate the misdemeanor city ordinance. Yet this alone does not sanction the officers' warrantless entry into Johnson's home.[1]

The majority first asserts that the police's subsequent entry was justified by "hot pursuit." This exception to the Fourth Amendment arose in *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In *Hayden,* "[t]he police were informed that an armed robbery had taken place, and that the suspect had entered 2111 Cocoa Lane less than five minutes before they reached it." *Id.* at 299. The Supreme Court held that "[t]he Fourth Amendment does not require police officers to delay the course of

an investigation if to do so would gravely endanger their lives or the lives of others." *Id.* The majority also suggests that this case falls under *Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), which recognized that danger to police or others can be an exigent circumstance, even when pursuit is not hot.

There is a key, material difference between *Hayden* and the present case: here, the police knew that Johnson lived at the house. In *Hayden,* all that the officers knew was that an armed robbery suspect had fled into a house. It was reasonable for them to fear that the home he had entered was not his own, and that an individual fleeing the police into another's home after committing a felony posed a threat to the occupants of that home. In this case, however, the home that Johnson entered was his own, and the police knew this. Contrariwise, the majority states that "the officers did not know whether the man lived at the house." *Maj. Op. at* 368. However, although Officer Cobb stated on direct examination that they did not know whether Johnson lived at the house, his memory was refreshed on cross-examination by a transcript from the police dispatch, in which the dispatcher had informed the officers that the man firing his gun lived at the house. Thus the officers did know, as Officer Cobb acknowledged, that Johnson lived at the house.

The officers' knowledge that Johnson lived at the house is crucial to this case because the permissibility of the police

---

1. The majority suggests that the district court "initially concluded that the warrantless entry was justified." *Maj. Op. at* 365. This simply is not so. The district court specifically refrained from ruling on the validity of the warrantless entry, suppressing the gun on other grounds. The district court, in grappling with the question before declining to rule upon it, unexceptionally noted that the officers "had the right to pursue the individu-

al to reasonably ascertain who it was and make an arrest for the misdemeanor committed in their presence." It is absolutely true that the officers could have arrested Johnson or that they could have pursed him within the confines of the Fourth Amendment. But the district court's statement says nothing about the police's ability to pursue him once he had entered into his own home, and the district court made no ruling on the matter.

entry depends on the reasonableness of their determination that an emergency existed, sufficient to excuse the normal requirements of the Fourth Amendment. Both of the emergency rationales relied upon by the majority in justifying the warrantless entry depend upon it being reasonable for the police to conclude that Johnson posed a danger to the occupants of his home. However, such a conclusion was not reasonable. What the officers saw was a man fire a shot into the air—not at anyone or anything—from his own front porch, and retreat inside when he saw a police officer—but, notably, before the police attempted to arrest him. On this basis alone, the officers concluded that Johnson posed such a danger to his family that an exigent circumstance existed.

Yet, the City of Grand Rapids only considers firing a gun in the air to be a misdemeanor, and the State of Michigan does not criminalize this conduct at all. Thus, based on non-felonious conduct directed at neither person nor property, the police concluded that Johnson was an imminent threat to his family once he re-entered his home. The unreasonableness of this conclusion is exacerbated by the fact that the officers knew that it was the Fourth of July; knew that discharging firearms into the air on that day is a (dangerous and illegal) tradition; and knew that various other individuals had engaged in the same conduct on that day. While the fact that it was the Fourth of July in no way excuses Johnson's misdemeanant conduct, it makes it even less reasonable for the police to conclude that because he committed the misdemeanor of firing a gun into the air he posed some threat to his family inside the home.

Firing the gun in the air was undoubtedly reckless and showed a disregard for the safety of potential passers-by, but it is a significant leap to conclude, from the fact that Johnson would act recklessly, that he intended to harm his family or the police. The specific reckless conduct (firing the gun in the air) would not have recurred once Johnson entered the house (and if he exited to do it again, the police could simply have arrested him). That Johnson might commit other dangerous, deadly, or deranged behavior once in his home is pure conjecture, and the mere existential possibility that Johnson could have done anything imaginable is not enough to support the warrantless violation of his home.

Thus, it was not reasonable, as the majority concludes, for the officers to determine on this basis alone that Johnson posed an emergency threat to his family, such that the officers were excused from the normal requirement of obtaining a warrant, which they presumably could have acquired, before entering his home. Exigent circumstances did not justify the warrantless entry into the home, and the entry therefore violated the Fourth Amendment.

Because I conclude that the warrantless entry into Johnson's home violated the Fourth Amendment, I would affirm the district court's suppression of the gun as evidence. Further, since I believe that the entry into the home was unconstitutional, I would not reach the issue of the validity of the scope of the protective sweep. I respectfully dissent.