NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0148n0.6

No. 18-1996

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

MICHAEL CLIFTON WATSON,

    Plaintiff-Appellee,

v.

CITY OF BURTON, et al.,

    Defendants,

DETECTIVE ERIC FREEMAN; DETECTIVE DAVID POWELL; DETECTIVE/SGT. SHAWN DUNCANSON; OFFICER DENNIS GROSS,

    Defendants-Appellants.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

**FILED**
Mar 28, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

</td></tr>
</table>

**BEFORE: CLAY and STRANCH, Circuit Judges; PEARSON, District Judge.***

**BENITA Y. PEARSON, District Judge.** *Pro se* Plaintiff Michael Clifton Watson brought this action against the City of Burton, Michigan, the Burton Police Department, and individual police officers, alleging violations of his Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983. The district court dismissed the City and the Police Department from the action but denied the officers' motion for summary judgment on Plaintiff's claim of unconstitutional arrest. The officers ("Defendants") challenge that partial denial of summary judgment in this

---

*The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

interlocutory appeal, arguing that they did not violate Plaintiff's Fourth Amendment rights when they arrested him and that, regardless, they are entitled to qualified immunity.[1]

We agree, as we must, that, viewing the facts in the light most favorable to Plaintiff, Plaintiff was standing inside his apartment when police officers physically seized and arrested him without a warrant. We also agree with the district court's conclusion that the officers' warrantless entry into Plaintiff's home and subsequent arrest was not justified by consent or exigent circumstances. Finally, we agree that it was clearly established at the time of the seizure and arrest that police officers may not seize a person in his home in the absence of a warrant, consent, or exigent circumstances, and Defendants are therefore not entitled to qualified immunity.

We therefore **AFFIRM** the district court's denial of summary judgment for Defendants.

## I. BACKGROUND

On August 4, 2015, a Burton Police Department officer responded to a call from Ms. Megan Hubarth. Ms. Hubarth alleged that Plaintiff had sent text messages threatening to harm her. Ms. Hubarth also expressed her belief that Plaintiff had a gun and was prepared to carry out his threat. After receiving a copy of those text messages, the police contacted the Burton City Attorney to ask whether there was probable cause to arrest Plaintiff.

On August 12, 2015, three Burton police officers appeared at Plaintiff's apartment without an arrest warrant. The officers knocked on Plaintiff's door twice, and Plaintiff opened the door. One of the officers asked Plaintiff, "Can you please step outside?" R. 75 (Order at 9) (Page ID #837). Without waiting for a response, "one of the officers reached in, grabbed [Plaintiff's] arm

---

[1] "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable final decision within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

and led [him] outside." *Id.* Plaintiff testified that, before the officer took his arm and led him "outside," he was "standing in the doorway" of his apartment. R. 54-2 (Watson Depo. Tr. at 18) (Page ID #519).

Once outside, Plaintiff admitted that he had sent the text messages the officers described, but he explained that he had sent them to Ms. Hubarth's friend, Ms. Vesta Meissner, not to Ms. Hubarth. Plaintiff was charged with a violation of City Ordinance 134.05A, Threats by Computer. He was released from jail the following day and arraigned on September 14, 2015. The charges against him were later dropped.

Plaintiff brought this action against the City, the Police Department, and the police officers involved in his arrest, alleging federal constitutional violations pursuant to 42 U.S.C. § 1983 and violations of state law. The district court denied the officers' motion for summary judgment on Plaintiff's claim of unconstitutional arrest, reasoning that, if Plaintiff was standing squarely inside his apartment when the officers physically seized him and led him outside, then the arrest violated clearly established law, and the officers are therefore not entitled to qualified immunity. "[I]t is clearly established," the court stated, "that police may not arrest a person in his home unless they have a warrant, consent, or exigent circumstances exist." R. 75 (Order at 11) (Page ID #839).

## II. ANALYSIS

When a district court denies qualified immunity on a motion for summary judgment, we have no jurisdiction to find facts on an ensuing interlocutory appeal. Nor do we have jurisdiction to review whether the district court was correct in observing that a given factual dispute was "genuine." Rather, Defendants "must 'concede the most favorable view of the facts to the plaintiff for purposes of the appeal.'" *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)). "[R]egardless of the district court's reasons for denying qualified immunity, we may exercise jurisdiction over the . . . appeal

to the extent it raises questions of law." *Id.* at 309 (emphasis removed) (quoting *Williams v. Mehra*, 186 F.3d 685, 689–90 (6th Cir. 1999) (*en banc*)). Interlocutory review of denials of qualified immunity are "limited to cases presenting neat abstract issues of law." *Johnson v. Jones*, 515 U.S. 304, 317 (1995) (quotation omitted).

Defendants acknowledge these limitations, but nevertheless, the thesis of their argument is that the district court misconstrued the facts of the case. Viewing the facts in the light most favorable to Plaintiff, the district court concluded that Plaintiff was arrested "in his home"—that an officer "reached inside the house and grabbed Plaintiff's arm." R. 75 (Order at 8–9) (Page ID #836–37). Defendants deny that any part of the arrest occurred inside Plaintiff's home; rather, they insist that Plaintiff was not "in his home" but "on the threshold," and thus in a "public place."

For purposes of this appeal, these facts, stated (as they were) in the light most favorable to Plaintiff, must be taken as true. When Plaintiff opened his door to interact with the police officers, he remained inside his apartment. Despite being close to the doorway, he was not "on the threshold" (as Defendants would have it) but "inside the house" (as the district court explained). Because we have no jurisdiction to resolve that dispute, we address Defendants' challenge only to the extent it raises a question of law. Two questions, then, are before the Court. First, the Court inquires whether it is lawful for a police officer to reach physically across the threshold into a suspect's house, seize his arm, and lead him outside to arrest him in the absence of a warrant, consent, or exigent circumstances. Second, if such a seizure is unconstitutional, was that unconstitutionality a matter of clearly established law at the time the seizure and arrest occurred?

**A.**

"It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398,

403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (internal quotation marks omitted)). Defendants dispute the precise boundaries where the constitutional protections of the "home" begin and end. They posit that, because Plaintiff stood just behind the open door to his apartment, he was not truly inside his home but rather in a public place, unprotected from warrantless seizure.

Both the Supreme Court and this Court have weighed in on the precise boundaries of the home in assessing the legitimacy of a warrantless arrest. In *Payton v. New York*, 445 U.S. 573 (1980), police officers had entered the defendants' home to make routine felony arrests without a warrant. The Supreme Court ruled their entry unconstitutional and explained,

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined that when bounded by the unambiguous physical dimensions of an individual's home . . . . In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.

*Id.* at 589–90.

In *United States v. Saari*, 272 F.3d 804 (6th Cir. 2001), this Court applied *Payton* in circumstances resembling this case. In *Saari*, police officers arrived at the defendant's house, stood at his front door, and knocked forcefully. The defendant testified that "when he opened the door, he was standing inside his apartment in the doorway." *Id.* at 807. Without a warrant, the police officers pointed their weapons at him, ordered him to step outside, and arrested him. *Id.* This Court held that the defendant in that case did not "voluntarily expose[ ] himself to the public by opening his door to the police," and that the officers were not entitled to seize the defendant without a warrant while he stood inside his own home. *Id.* at 807–08.

Defendants hope to distinguish *Saari* by pointing out that, in this case, the police officers did not have guns drawn or otherwise display a show of force when they demanded that Plaintiff

step outside. The distinction, however, makes no difference. The importance of the show of force in *Saari* was that it formed the basis for our holding that, although the police did not physically cross the threshold of the defendant's home, officers carried out a "constructive in-home arrest." *Id.* at 810. In other words, Saari was seized by intimidation and a verbal command while standing inside his home. In this case, the police crossed the threshold of Watson's home and seized him by physical touching. In both cases, the litigants were seized without a warrant while they stood inside their respective homes. "Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton*, 445 U.S. at 590.

### B.

Despite the general rule, a warrantless seizure in the home might be reasonable if "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (alteration in original) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978) (alteration in original)). Defendants argue that, even if they did breach Plaintiff's home when they arrested him without a warrant, that breach was justified by exigent circumstances. Specifically, Defendants argue that it was necessary to seize Plaintiff in his home without a warrant because his threatening text messages posed "a risk of danger to the police or others." *See Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010) (citation omitted). They further insist that "[p]olice are not required to wait for injury or death to occur in their presence before acting to protect people from a gunman." *See United States v. Johnson*, 106 F. App'x 363, 368 (6th Cir. 2004).

Plaintiff did not pose an immediate risk of danger to the police or anyone else. *United States v. Johnson* describes a suspect who wildly fired a shotgun in a residential neighborhood, reloaded, and fled indoors when he noticed police officers approaching. *Id.* Defendants in this

case do not suggest that Plaintiff brandished a weapon, raised his voice, or made any threatening gestures, that any potential victims were with him in his apartment, or any other reason that he might have posed an immediate risk to anyone's safety. There was, therefore, no compelling law-enforcement need to enter the home at the moment they did. We conclude that there were no exigent circumstances justifying Defendants' warrantless intrusion into Plaintiff's home.

## C.

Because the facts of this case are virtually identical to those in *Saari*, and because exigent circumstances were patently lacking, we agree with the district court that the relevant Fourth Amendment law was clearly established at the time the arrest occurred. Defendants, therefore, are not entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982).

## III. CONCLUSION

Taking the facts in the light most favorable to Plaintiff, Defendants violated Plaintiff's Fourth Amendment right to be secure from seizure in his home absent a warrant, consent, or exigent circumstances. The relevant law was clearly established at the time of the arrest. We therefore **AFFIRM** the district court's denial of summary judgment for Defendants.